1  Ekwan E. Rhow - State Bar No. 174604
       eer@birdmarella.com
2  Timothy B. Yoo - State Bar No. 254332
       tby@birdmarella.com
3  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW, P.C.
4  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
5  Telephone: (310) 201-2100
   Facsimile: (310) 201-2110
6
   Attorneys for Defendant
7  CJ E&M America, Inc.

8                  **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11

12  DFSB KOLLECTIVE CO. LTD.,                CASE NO: 2:15-cv-01650-SVW-FFM

13              Plaintiff,                    **DEFENDANT CJ E&M AMERICA,
                                             INC.'S NOTICE OF MOTION AND
                 vs.                          MOTION TO DISMISS
14                                            PLAINTIFF'S COMPLAINT FOR
                                             *FORUM NON CONVENIENS*, LACK
15  CJ E&M, INC., a Korean corporation;       OF STANDING, AND FAILURE TO
    CJ E&M AMERICA, INC., a California        STATE A CLAIM FOR RELIEF;
16  corporation,                              MEMORANDUM OF POINTS AND
                                             AUTHORITIES IN SUPPORT
17              Defendants.                   THEREOF**

18                                           **FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

19                                           [Declarations of Angela S. Killoren,
                                             Dong-hun Lee, and Ho-seung Yang
20                                           Submitted Concurrently Herewith]

21                                           Date:    June 1, 2015
                                             Time:    1:30 P.M.
22                                           Crtrm.:  6

23                                           Assigned to Hon. Stephen V. Wilson

24

25

26

27

28

3151505.6

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 1, 2015, at 1:30 p.m., or as soon thereafter as defendant CJ E&M America, Inc. ("CJ E&M America") may be heard before the Honorable Stephen V. Wilson in Courtroom 6 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, CA 90012, CJ America will and hereby does move this Court to dismiss this action for *forum non conveniens*, or in the alternative, under Federal Rule of Civil Procedure Rule 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

This motion is supported by this Notice of Motion, the accompanying Memorandum of Points and Authorities; the Declarations of Dong-hun Lee ("Lee Decl."), Angela S. Killoren ("Killoren Decl."), and Ho-seung Yang ("Yang Decl."); the attached exhibits; and such other evidence and arguments as may be presented at or before the hearing on this motion, and all other matters of which the Court may take judicial notice or which it deems appropriate to consider.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 20, 2015.

DATED:  April 29, 2015                    Respectfully submitted,

Ekwan E. Rhow
Timothy B. Yoo
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:      */s/ Timothy B. Yoo*
                Timothy B. Yoo
         Attorneys for Defendant
         CJ E&M America, Inc.

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................... 4

        A.      The Parties ...................................................................................... 4

        B.      Summary of Dispute ...................................................................... 5

III.    ARGUMENT ............................................................................................ 6

        A.      This Court Should Dismiss This Action Based On *Forum Non Conveniens*. ..................................................................................... 6

                1.      Korea is an available and adequate forum. ....................... 7

                2.      It is far more convenient for the parties to litigate this dispute in Korea. ............................................................. 10

                3.      The Court should dismiss this action in the interest of judicial economy and the public's convenience. ............ 13

                4.      This motion should be granted based on *forum non conveniens* ...................................................................... 16

        B.      Plaintiff Has Failed To State A Claim For Relief ........................ 16

                1.      Plaintiff has failed to state a claim for copyright infringement. .................................................................... 17

                2.      Plaintiff has failed to state a claim for violations of the DMCA. ............................................................................ 20

        C.      Plaintiff Lacks Standing To Sue. ................................................. 22

IV.     CONCLUSION ...................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A&M Records, Inc. v. Napster Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ............................................................. 20

*Allstate Life Ins. Co. v. Linter Group Ltd.*,
   994 F.2d 996 (2d Cir. 1993) ................................................................. 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 ......................................................................................... 17

*Baumgart v. Fairchild Aircraft Corp.*,
   981 F.2d 824 (5th Cir. 1993) ............................................................... 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................. 17

*Cariajano v. Occidental Petroleum Corp.*,
   643 F.3d 1216 (9th Cir. 2011) ............................................................. 22

*Ceramic Corp. of America v. Inka Maritime Corp.*,
   1 F.3d 947 (9th Cir. 1993) ..................................................................... 7

*Cheng v. Boeing Co.*,
   708 F.2d 1406 (9th Cir. 1983) ............................................................... 7

*Creative Technology, Ltd. v. Aztech Systems PTE*,
   61 F.3d 696 (9th Cir. 1995) ......................................................... 8, 9, 14

*Howe v. Goldcorp Invest. Ltd.*,
   946 F.2d 944 (1st Cir. 1991) ............................................................... 12

*IQ Group Ltd. v. Wiesner Publ'g Inc.*,
   409 F. Supp. 2d 587 (D.N.J. 2006) ...................................................... 22

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
   153 F.3d 82 (2d Cir. 1998) ................................................................... 13

*Lahiri v. Universal Music & Video Dist.*,
   513 F. Supp. 2d 1172 (C.D. Cal. 2007) ............................................... 13

*Laws v. Sony Music Entm't, Inc.*,
   448 F.3d 1134 (9th Cir. 2006) ........................................................................ 2, 20

*Lockman Found. v. Evangelical Alliance Mission*,
   930 F.2d 764 (9th Cir. 1991) ............................................................................. 7, 9

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) ............................................................. 6, 7, 10, 13

*Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*,
   24 F.3d 1368 (Fed. Cir. 1994) ............................................................................. 11

*Marvullo v. Gruner & Jahr*,
   105 F. Supp. 2d 225 (S.D.N.Y. 2000) ................................................................ 18

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ............................................................................... 17

*In re Napster, Inc.*,
   377 F. Supp. 2d 796 (N.D. Cal. 2005) ............................................................... 19

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   213 F. Supp. 2d 1146 (C.D. Cal. 2002) ............................................................. 17

*Perfect 10 v. Google, Inc.*,
   416 F. Supp. 2d 828 (C.D. Cal. 2006) ............................................................... 19

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ........................................................................... 6, 7, 8, 14

*Righthaven LLC v. Hoehn*,
   716 F.3d 1166 (9th Cir. 2013) ............................................................................ 23

*Silvers v. Sony Pictures Entm't, Inc.*,
   402 F.3d 881 (9th Cir. 2005) ............................................................................... 23

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ........................................................................................... 3, 6

*Textile Secrets Int'l, Inc. v. Ya-ya Brand, Inc.*,
   524 F. Supp. 2d 1184 (C.D. Cal. 2007) .............................................................. 22

**Federal Statutes**

17 U.S.C. § 201 ......................................................................................................... 18

3151505.6

ii

17 U.S.C. § 301(a) ................................................................................ 2

17 U.S.C. § 501(b) .............................................................................. 23

28 U.S.C. § 1782................................................................................ 12, 13

**State Statutes**

Copyright Act. ................................................................................. 20, 23

Digital Millennium Copyright Act ..........................................................*passim*

Singaporean Copyright Act ...................................................................... 9

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1)............................................... 16, 22

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court can and should decline to hear this case, which involves a Korean plaintiff suing a Korean company and, on an untenable basis, its American subsidiary, over alleged acts or omissions rooted in Korean copyright law that had to have occurred entirely in Korea.  In consideration of the enormous inconvenience to the parties of resolving this dispute before this Court, and in the interest of judicial economy, this Court should dismiss this action in its entirety so that it can be refiled in a Korean court, where it can be more appropriately heard.  Alternatively, should the Court elect not to exercise its broad discretion to decline to hear this case, it should nevertheless dismiss this action because the Plaintiff lacks standing to sue and in any event has failed to state claims for which this Court can grant it relief.

As background, Korean Plaintiff DFSB Kollective Co. Ltd. claims to hold certain overseas rights to sound recordings by various Korean indie-rock bands, which were first published in Korea.  Plaintiff claims that Defendants infringed its purported overseas distribution rights to those recordings.  In 2011, DFSB initiated a lawsuit in the Seoul Central District Court asserting, as it does here, copyright infringement claims against Defendant CJ E&M Corporation.[1]  That lawsuit resulted in a settlement agreement drafted, negotiated, and executed in Korea and governed by Korean law.  DFSB now purports to bring similar claims in alleging again that Defendants infringed its purported overseas distribution rights.  But because its actual damages would be trivial or none even if it could establish its claims, which it cannot, Plaintiff sued Defendants in this Court instead of in Korea in order to vex Defendants with oppressive logistical burdens and the specter of the enhanced damages available under a U.S. statutory scheme.

---

[1]   The name of Defendant CJ E&M Corporation is erroneously stylized as "CJ E&M, Inc." in Plaintiff's complaint.

In furtherance of this transparent tactic, and in an attempt to bolster its lawsuit's attenuated ties to this forum, Plaintiff has tacked on CJ E&M America as a Defendant, even though CJ E&M America could not have committed any of the alleged acts on which Plaintiff's claims are based.  Apparently recognizing this, Plaintiff obliquely alleges a civil conspiracy between CJ E&M America and its Korean parent, CJ E&M Corporation ("CJ E&M"), hinting they could be jointly liable for the actions of either.  But using sleight of hand, Plaintiff cunningly does not actually assert a civil conspiracy cause of action, since such a claim would be preempted not to mention vitiated by the absence of an underlying tort.[2]

Fortunately, this Court need not and should not abide Plaintiff's blatant forum shopping.  The doctrine of *forum non conveniens* affords this Court discretion to dismiss this case since CJ E&M America can show clearly that the inconvenience to the parties and this Court outbalances Plaintiff's calculated choice of forum.  For example:

- All of the relevant evidence is located in Korea, as are all of the salient fact witnesses.

- Most if not all of the underlying documents, such as licensing agreements that could be at issue and the above-referenced settlement agreement that is a defense to Plaintiff's claims, are written in Korean and would have to be translated and certified before they could be submitted to this Court.

- This Court would have to interpret and apply Korean law as it relates to transfers of copyrights and the proper scope and effect of the prior settlement agreement.

- All of the relevant third parties, such as the artists or the management companies that own the underlying copyrights at issue as well as third-party content providers who may have indemnity obligations, all reside in Korea and likely outside of this Court's jurisdictional reach.

- It would be expensive and otherwise onerous for Defendants to ensure the trial attendance of key witnesses, including third-party witnesses, who all reside in Korea.  Conversely, resolving this dispute in a Korean court would not inconvenience Plaintiff one whit, since it resides in

---

[2]   *See* 17 U.S.C. § 301(a); *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006).

3151505.6

1    Korea.

2    Because the inconvenience to the parties and the public is staggeringly

3    disproportionate to Plaintiff's choice of a forum away from its home, this Court can

4    in its prudence dismiss this case in favor of a Korean court.

5    Alternatively, this Court should dismiss Plaintiff's complaint because the

6    lawsuit itself lacks merit.[3]  *First*, Plaintiff has no right to bring this action.  While it

7    claims to have "been assigned the exclusive right to pursue causes of action for

8    infringement that have accrued in favor of the copyright owners of these works[,]"

9    the Ninth Circuit has held that the bare "right to sue" is insufficient to confer

10   standing for copyright claims.  While it therefore must show that it held at least one

11   of the exclusive rights conferred by copyright protection *at the time* of any alleged

12   infringement, Plaintiff claims merely to have "exclusive licenses" to certain works

13   without identifying in what manner, when, and from whom these supposed licenses

14   were received.

15   *Second*, Plaintiff's pleadings are defective because they fail to state claims for

16   which this Court can grant it relief.  Its copyright infringement claim, for instance,

17   fails to identify specific instances of actual infringement—e.g., which works were

18   infringed on which specific dates and by what specific acts.  At most, Plaintiff

19   alleges that certain sound recordings were made available.  But other courts in this

20   District have held that the distribution rights of a copyright holder are not infringed

21   absent an "actual dissemination" of copies, which Plaintiff has failed to allege.

22   Likewise, Plaintiff's second cause of action, for violations of the Digital Millennium

23   Copyright Act ("DMCA"), fails as a matter of law because the type of information

24   that Plaintiff alleges was altered here cannot be "copyright management

25   _____

26   [3]   Since a motion to dismiss for *forum non conveniens* is not based on the actual
     merits of the action, this Court can consider dismissal *before* reaching any threshold

27   objections such as standing or jurisdiction.  *Sinochem Int'l Co. v. Malaysia Int'l
     Shipping Corp.*, 549 U.S. 422 (2007).

28

1   information" under the statute.

2        For all these reasons, and for the reasons set forth more fully below, this

3   Court should dismiss this action.

4   **II.     FACTUAL BACKGROUND**

5        **A.     The Parties**

6        Defendant CJ E&M[4] is a Korean entertainment and media content company

7   comprised of five core divisions: film, cable broadcast, music, online, and live

8   performances.  The music division is responsible for all music licensing, including

9   licensing for recording artists under CJ E&M's management as well as licensing

10  content to and from third parties.  (Lee Decl. ¶ 3.)  This includes curating all of the

11  musical content on the "Mnet" website (the online portal for the company's music

12  broadcast channel), which is administered by CJ E&M's online division.  (Lee Decl.

13  ¶ 11.)

14       Meanwhile, CJ E&M America is essentially the American arm for CJ E&M's

15  movie and cable broadcast divisions.  (Killoren Decl. ¶ 3.)  CJ E&M America is not

16  involved in music licensing whatsoever, nor is it involved in the back-end or front-

17  end administration of the "Mnet" website.  (Killoren Decl. ¶¶ 4-7.)  Therefore, CJ

18  E&M America does not have the access or wherewithal to tamper with any

19  copyright management information relating to the asserted sound recordings.  As a

20  media content company, CJ E&M America's business is creating and acquiring

21  innovative new film and television content.  By contrast, Plaintiff is, in essence, a

22  copyright troll, in the business of attempting to acquire and monetize others' music-

23  related copyrights, which, again, CJ E&M America has no involvement in.

24       For example, Plaintiff sued Defendant CJ E&M in a Korean court in 2011,

25  alleging that CJ E&M had tampered with the same type of information it alleges was

26  altered here and asserting all of the songs listed in Exhibit 1 of its current complaint

27  _____

28  [4]   CJ E&M has not been served and has not yet appeared in this action.

1   ("Compl.").  (*See* Compl. ¶ 29; Lee Decl. ¶ 5.)  While the Korean court in that

2   action entered a final judgment as to two discrete issues, Plaintiff covenanted as part

3   of a concurrent settlement agreement not to sue CJ E&M for civil damages again

4   based on any claims it had asserted in that litigation (the "2012 settlement

5   agreement").  (Lee Decl. ¶ 7.)

6         In its current complaint, Plaintiff attaches a list of 303 sound recordings for

7   which it claims to have certain "exclusive rights[.]"  (Compl. ¶¶ 13-15.)  Again,

8   these are a complete subset of the 3,947 sound recordings that Plaintiff previously

9   asserted in the 2011 Korean litigation.

10        **B.      Summary of Dispute**

11        Here, Plaintiff asserts claims for copyright infringement and violations of the

12  DMCA against CJ E&M and CJ E&M America based on three categories of alleged

13  bad acts:

14        (1)    distribution of music in the U.S. through the Beats Music service;

15        (2)    altering information relating to the music distributed through Beats

16               Music; and

17        (3)    distribution of music in the U.S. through the "Mnet" website, which is

18               housed in Korea.

19  (Compl. ¶¶ 2, 3, 22-27, 30-37, 50.)  Plaintiff alleges only the first two categories

20  against CJ E&M America.  *Id.*

21        The key anticipated issues in resolving the dispute, whether in a U.S. or

22  Korean court, are as follows:

23        •   ***Validity of the underlying copyrights.***  A U.S. copyright registration is
          only prima facie evidence that the claimed work is validly protected by

24        copyright.  Here, the asserted sound recordings were originally
          published in Korea, and thus, presumptively covered by Korean

25        copyright law, under which their validity (or lack thereof) must be
          determined.

26
          •   ***Ownership of the overseas distribution rights.***  On the one hand,

27        Plaintiff claims to own the distribution rights to the asserted works.
          Since a copyright vests in the original author, or in some cases the

28        author's employer, Plaintiff must have acquired any rights in them, if at

all, by assignment from the original or a subsequent copyright owner.

On the other hand, CJ E&M will likely claim that it owns the overseas distribution rights to sound recordings it distributes outside of Korea.

- ***Scope and preclusive effect of the release in the 2012 settlement agreement.*** A court will have to determine the scope and effect of the release language in the 2012 settlement agreement, which is written in Korean and governed by Korean law.

- ***Instrumentalities of the alleged infringement.*** Plaintiff alleges that Defendants distributed copyrighted work on the Beats Music streaming service as well as on the "Mnet" website. How and which music was provided to those platforms, and when by whom it was provided, are therefore central issues.

## III.   ARGUMENT

### A.   This Court Should Dismiss This Action Based On *Forum Non Conveniens*.

Under the doctrine of *forum non conveniens*, a court can dismiss an action in favor of litigation in a more convenient foreign forum if a defendant establishes: (i) that an alternative and adequate foreign forum exists; and (ii) that the balance of the relevant private and public interests weighs in favor of dismissal. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). "The *forum non conveniens* determination is committed to the sound discretion[5] of the trial court[,]" and in making such a determination based on the unique facts of each case, the court should primarily consider the convenience of the parties and the court. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256-57 (1981).

Put differently, a court can and should dismiss an action if a moving party clearly establishes "such oppression and vexation of a defendant as to be out of

---

[5]   "The district court's decision 'may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.'" *Lueck*, 236 F.3d at 1143 (citations omitted).

1  proportion to the plaintiff's convenience, which may be shown to be slight or

2  nonexistent[.]"  *Cheng v. Boeing Co.*, 708 F.2d 1406, 1409 (9th Cir. 1983) (citing

3  *Miskow v. Boeing Co.*, 664 F.2d 205, 208 (9th Cir. 1981)).  That is, if "the balance

4  of conveniences suggests that trial in the chosen forum would be unnecessarily

5  burdensome for the defendant or the court, dismissal is proper." *Lockman Found. v.*

6  *Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991) (citation omitted).

7       Further, while a plaintiff's choice of forum is normally accorded due

8  deference, a court should accord less deference where, as here, the plaintiff  is a

9  foreign citizen that has chosen a forum outside of its home forum.  *See Piper*

10  *Aircraft Co.*, 454 U.S. at 247 ("a foreign plaintiff's choice deserves less deference").

### 1.      Korea is an available and adequate forum.

12       A forum is considered "available" when all defendants are amenable to suit in

13  that forum and that forum permits suits involving the subject matter of the dispute.

14  *Lueck*, 236 F.3d at 1143.  An alternative foreign forum is "adequate" if it provides

15  the plaintiff a potential avenue for redress.  *See Piper Aircraft Co.*, 454 U.S. at 254

16  n.22.  Even if particular causes of action or certain specific remedies are not

17  available in the foreign forum, it is considered adequate so long as (i) it permits

18  litigation of the subject matter while providing adequate procedural safeguards and

19  (ii) the remedy available is not so inadequate as to constitute no remedy at all.  *See*

20  *Ceramic Corp. of America v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir. 1993).

21  A Korean court is clearly an available and adequate foreign forum.

22       *First*, both Defendants are amenable to suit in a Korean court.  Defendant CJ

23  E&M is a Korean corporation with its principal place of business in Seoul, Korea,

24  (Complaint ¶ 7), and it therefore resides within the jurisdiction of the Korean courts.

25  (Yang Decl. ¶ 4.)  Furthermore, should this Court dismiss this action on the basis of

26  *forum non conveniens*, CJ E&M America would submit to the jurisdiction of a

27  Korean court in order to defend itself against these allegations.  A Korean court is

28  therefore an available forum.  *See Lockman Found.*, 930 F.2d at 768 ("Because the

1   record shows that [defendant] has agreed to submit to Japanese jurisdiction, and

2   because [other defendants] reside in Japan, the threshold test is satisfied.").

3   *Second*, Korean law provides stern protections for copyrighted works, so

4   Plaintiff could therefore sue Defendants in a Korean court based on the same subject

5   matter at issue here, i.e., purported overseas distribution rights to copyrighted works.

6   (Yang Decl. ¶¶ 3, 5.)  In fact, as Plaintiff underscores in its own complaint, *it has*

7   *done so before*.  (Compl. ¶ 29) ("In August 2012, the Seoul Central District (11th

8   Civil Case Division) in South Korea entered a final judgment against CJ E&M,

9   requiring it to pay 50,000,000 KRW . . . .").  In the 2011 Korean litigation, Plaintiff

10  sought redress for CJ E&M allegedly "issuing duplicate ISRCs for digital music

11  content that DFSB Kollective held overseas distribution rights to[,]" *id.*, which are

12  substantially similar to Plaintiff's current allegations.  (*See, e.g.*, Compl. ¶¶ 2, 27.)

13  *Third*, a Korean court would provide adequate procedural safeguards and

14  sufficient remedies.  (Yang Decl. ¶¶ 3, 8.)  While a Korean court *might* not award

15  the enhanced statutory damages that Plaintiff so plainly covets,[6] a foreign forum can

16  be adequate even if the range of remedies or potential recoveries available in that

17  forum are less extensive than in a U.S. federal court.  *See Piper*, 454 U.S. at 247;

18  *Creative Technology, Ltd. v. Aztech Systems PTE*, 61 F.3d 696, 703 (9th Cir. 1995).

19  For instance, in *Lockman Foundation*, an American company sued several

20  Japanese defendants in a U.S. district court, asserting copyright claims and other

21  causes of action, and the district court dismissed the action based on *forum non*

22  *conveniens*.  While the American plaintiff raised on appeal the ground that it would

23  be prevented from pursuing its U.S.-specific causes of action and possible enhanced

24  damages in the foreign forum, in affirming the district court's ruling, the Court of

25  _____

26  [6]   A Korean court would as a threshold matter determine which substantive law to apply to Plaintiff's infringement claims.  (Yang Decl. ¶¶ 9-10.)  If the court

27  determined that U.S. copyright law applied, it could award corresponding remedies. *Id.*

28

8

1    Appeals observed that "the 'possibility of an unfavorable change in the law' is not to

2    be given conclusive or substantial weight in a *forum non conveniens* inquiry."

3    *Lockman Found.*, 930 F.2d at 768-69 (citations omitted).  Rather, to succeed in

4    challenging the adequacy of an alternative foreign forum, a plaintiff must show that

5    its possible recovery would be "so clearly inadequate or unsatisfactory that it is no

6    remedy at all."  *Id.* (citation omitted).

7        But far from offering "no remedy at all," a Korean court can award significant

8    monetary damages for claims such as the ones asserted here, *as Plaintiff trumpets in*

9    *its own complaint* (Compl. ¶ 29).  For instance, a copyright owner can claim

10   statutory damages of up to 50,000,000 KRW (roughly $50,000 USD) per work for

11   infringement.  (Yang Decl. ¶ 8.)  A Korean court can also provide injunctive relief.

12   and thereby enjoin the potential infringement of a copyright owner's work (Yang

13   Decl. ¶ 3.)  Moreover, the statute of limitations for copyright claims is generally

14   three years, so Plaintiff would have ample time to refile its suit in Korea.  (Yang

15   Decl. ¶ 5.)

16       And in any event, a Korean court could apply U.S. copyright law if it

17   determined, under its choice of law principles, that U.S. law applied to the dispute,

18   (Yang Decl. ¶¶ 9-10), which further buttresses the adequacy of a Korean court.  In

19   *Creative Technology*, a Singaporean company sued a Singaporean corporation and

20   its wholly-owned American subsidiary for copyright infringement.  In affirming the

21   district court's granting of defendant's motion to dismiss for *forum non conveniens*

22   in favor of a Singaporean court, the Court of Appeals cited, in addition to the

23   remedies available under the Singaporean Copyright Act, the availability of U.S.

24   copyright law in the foreign forum as evidence of its adequacy.  *Creative*

25   *Technology*, 61 F.3d at 702-03.

26       Therefore, because a Korean court would allow Plaintiff to sue for copyright

27   infringement while providing adequate procedural safeguards, and because Plaintiff

28   cannot reasonably dispute its adequacy (having sued there before the same type of

3151505.6                                    9

relief), a Korean court is an available and adequate foreign forum for this dispute.

**2.     It is far more convenient for the parties to litigate this dispute in Korea.**

The private interest factors that courts consider when weighing the convenience of the parties include: (i) the residence of the parties and the witnesses; (ii) access to the physical evidence and other sources of proof; (iii) whether unwilling witnesses can be compelled to testify; (iv) the cost of bringing witnesses to trial; (v) the enforceability of the judgment; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *See Lueck*, 236 F.3d at 1145-46 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). "The district court should look to any or all of the above factors which are relevant to the case before it, giving appropriate weight to each. It should consider them together in arriving at a balanced conclusion." *Id.* (citations omitted). On balance, a Korean court would be far more convenient for Defendants while Plaintiff would not be concurrently inconvenienced by litigating in its home forum.

*First*, since nobody at CJ E&M America is involved in music licensing or administration of the "Mnet" website, all of the salient witnesses and sources of evidence concerning this action must be located, if anywhere, in Korea, where it would be enormously expensive and burdensome for the parties to access during litigation in this forum. (Killoren Decl. ¶ 9.)

For example, for music content that it distributes, CJ E&M either owns the rights directly or acquires the necessary distribution rights via licenses from third-party content providers, such as Neowiz Internet. This is all handled by Dong-hun Lee and his team at CJ E&M in Korea, which also curates all of the music that CJ E&M provides to the Beats Music streaming service. (Lee Decl. ¶¶ 3, 8.) Hence, documents proving those licensing arrangements as well as the relevant underlying licenses themselves are all located in Korea. (Lee Decl. ¶¶ 9-10.) Moreover, the "Mnet" website is administered entirely in Korea, and its music content is curated

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AUTHORITIES
CASE NO: 2:15-CV-01650-SVW-FFM

1   and accessible only in Korea.  (Lee Decl. ¶ 11; Killoren Decl. ¶ 8.)

2       It would likewise be expensive and otherwise onerous for Defendants to

3   ensure the attendance of key witnesses, including third-party witnesses as discussed

4   *infra*, at a trial in this Court.

5       *Second*, most if not all of the underlying documents, including the licensing

6   agreements that would be at issue, are all written in Korean, and would therefore

7   have to be translated and certified before they could be submitted to this Court, a

8   fact that favors dismissal.  *See, e.g.*, *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*,

9   24 F.3d 1368, 1375 (Fed. Cir. 1994) (difficulty of "having to agree on the proper

10  translation of [Japanese] laws, documents and other communications" supported

11  dismissal.)

12      For example, Dong-hun Lee, in charge of music licensing for CJ E&M, and

13  his team correspond internally and externally almost exclusively in Korean, and the

14  licensing agreements for Korean music that his team deals with are likewise

15  predominantly if not entirely written in Korean.  (Lee Decl. ¶¶ 4, 9, 10.)

16      Furthermore, the 2012 Korean settlement agreement, one of the primary

17  defenses to this action, is written entirely in Korea.  (Lee Decl. Exh. A.)

18      *Third*, since all of the relevant third parties all reside in Korea and likely

19  outside the jurisdictional reach of this Court, Defendants' ability to obtain discovery

20  from them or compel their attendance at trial would be significantly hampered.  For

21  example, Plaintiff's purported ownership claims to the copyrights at issue rest on its

22  assertion that it "has exclusive licenses" to them, meaning they were ostensibly

23  received from the artists, the artists' management companies, or some other third

24  party who originally held the rights.  While Defendants would therefore be entitled

25  to discovery from such third parties, the subpoena power of this Court may not

26  extend so far as to ensure compliance with Defendants' discovery requests or

27  attendance at trial.  A Korean court, on the other hand, would face no such difficulty

28  in compelling evidence from unwilling third parties residing in Korea.  (Yang Decl.

1  ¶ 12.)

2      Notably, the relative availability of compulsory process to compel the

3  attendance of significant unwilling witnesses at trial is considered the most

4  important private interest factor.  *See Howe v. Goldcorp Invest. Ltd.*, 946 F.2d 944,

5  951 (1st Cir. 1991) (because "only Canadian courts, and not courts within the

6  United States, have the legal power to compel testimony of twelve Canadian

7  potential witnesses who are not under the control of either party" the private

8  interests weighed heavily in favor of dismissal).  Similarly here, this factor weighs

9  heavily in favor of dismissal because only Korean courts could compel the

10  attendance of many of the key witnesses, who all reside in Korea.

11      Furthermore, Defendants would have difficulty in this forum impleading

12  required Korean third parties that may owe an indemnity obligation to CJ E&M,

13  such as Neowiz Internet, a Korean third-party from whom CJ E&M obtains some its

14  music content and who resides outside the jurisdiction of this Court.  This is a factor

15  that favors dismissal.  *See Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996,

16  1002 (2d Cir. 1993) (inability to implead other parties is factor favoring dismissal);

17  *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 828 (5th Cir. 1993) (dismissal

18  appropriate where defendant would be able to implead third party in foreign forum,

19  but not in district court).

20      *Finally*, Plaintiff would not be inconvenienced by litigating in its home

21  forum.  The only third parties relevant to this dispute residing outside of Korea are

22  Beats Music and MediaNet, both Delaware corporations, and any relevant evidence

23  they have are equally accessible from Defendant CJ E&M.  Furthermore, since

24  Beats Music conducts substantial business in Korea, a Korean court could exercise

25  jurisdiction over it and ensure that it makes relevant discovery.[7]  Otherwise, all of

26  

27  [7]  As a further safeguard, Plaintiff could as needed submit an application under

28  Section 1782, which allows a party to a foreign legal proceeding to apply to a U.S.

1   the relevant evidence, fact witnesses, and related third parties are located in Korea
2   and within the purview of the Korean courts.
3       The balance of these private interest factors therefore tips not just slightly, but
4   significantly, in favor of a Korean forum.

5       **3.      The Court should dismiss this action in the interest of
              judicial economy and the public's convenience.**

7       Courts consider the following public interest factors: (i) local interest of the
8   lawsuit; (ii) avoidance of unnecessary problems in conflicts of laws, or in
9   application of foreign laws; (iii) burden on local courts and juries; (iv) congestion in
10  the court; and (v) the costs of resolving a dispute unrelated to this forum. *See Lueck*,
11  236 F.3d at 1147. The public interest factors weigh against resolving this dispute
12  before this Court.

13      *First*, since the works at issue were recorded and published in Korea, this
14  Court will need to apply Korean law as it relates to the ownership of the copyrights
15  in those works, including specifically whether any purported assignment of rights
16  was effective and the nature of the interest assigned, if any. *See Lahiri v. Universal*
17  *Music & Video Dist.*, 513 F. Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007) ("Initial
18  ownership of a copyrighted work is determined by the laws in the work's country of
19  origin. . . . Because [work was created in a foreign country], that country's copyright
20  laws are applied to determine initial ownership.")[8]

21      Moreover, this Court will need to interpret the scope and effect of the release

22  court to obtain evidence for use in that foreign proceeding. 28 U.S.C. § 1782.

[8]   The applicable choice of law in the international copyright context is not
necessarily the same for all issues, even within a single infringement action. *See*
*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90 (2d Cir.
1998). For instance, while the question of copyright ownership of a work is
governed by the laws of that work's country of origin, *Lahiri*, 513 F. Supp. at 1176
n.4, the issue of whether the work was infringed is often governed by the laws of the
country in which the alleged infringement occurred. *See Itar-Tass*, 153 F.3d at 90-
91.

3151505.6

13

language contained in the 2012 Korean settlement agreement, a defense to Plaintiff's current lawsuit, under Korean law.  As the Supreme Court has held, "the need to apply foreign law point[s] towards dismissal."  *Piper*, 454 U.S. at 260.

    *Second*, there is no local interest in having this case resolved before this Court, since Plaintiff's claims are based on acts that must have occurred, if at all, entirely in Korea concerning Korean sound recordings that are presumably covered by Korean copyright law.  While CJ E&M America resides in this forum, as discussed *supra*, it could not have committed any of the acts that Plaintiff alleges in its complaint.  Hence, this lawsuit concerns only the alleged actions of the Korean Defendant, CJ E&M.  As such, it is essentially a dispute between two Korean companies, a fact that favors dismissal.  In confronting a nearly identical set of facts as here, the Court of Appeals in *Creative Technology* concluded that the public interests tipped towards dismissal:

> This is essentially a dispute between two Singapore corporations as to which of them was the original developer of the disputed [intellectual property]. *This is not a case involving the piracy of American made products or substantively involving American companies*. As such, the United States' interest in resolving this controversy and the relation of the jury community to this controversy are extremely attenuated and do not sway the balance against dismissal. The presence of [a wholly-owned American subsidiary as a defendant], influences our analysis very little.

*Creative Technology*, 61 F.3d at 704 (emphasis added).

    While Plaintiff might argue there could be a slight local interest insofar as the alleged infringement occurred through the supposed distribution of works in the U.S., it cannot show there is a significant local interest in the Korean works at issue, the overseas distribution rights pertaining to which are governed by Korean copyright law.  The only discernible interest, then, pertains to the U.S.'s general treaty obligations in according copyright protection to foreign works, which is only nebulously tied to this forum's locality and therefore insufficient to countervail this forum's citizens' burden in resolving this lawsuit in this Court instead of a Korean

1    court.  *See id.* ("'[U.S.] copyright laws do not serve this purpose of protecting

2    consumers.  They are designed to protect the property rights of copyright owners.'

3    As such, the key interests in this dispute lie with the Singapore corporations, not the

4    American public.") (citations omitted).

5          The only remaining possible nexus to this forum is that Beats Music and

6    MediaNet are Delaware corporations with offices within this District, and Plaintiff

7    claims that Defendants uploaded certain sound recordings to the Beats Music

8    streaming service via MediaNet.  (Compl. ¶¶ 2, 25-27.)  But this lawsuit does not

9    concern the rights and duties (or breaches thereof) as between any party and Beats

10   Music or MediaNet.  Rather, this Court is asked only to determine the respective

11   rights as between Plaintiff on the one hand and CJ E&M and CJ E&M America on

12   the other.  But since there is at most a trivial local interest regarding overseas rights

13   to sound recordings by Korean indie-rock bands, there are no local interests that

14   would weigh against resolving this action in a Korean forum.

15         Meanwhile, the local Korean interest in resolving this dispute is strong.  The

16   primary alleged tortfeasor is a Korean corporation, the largest media and

17   entertainment conglomerate in the country.  Plaintiff is also a Korean company, and

18   it is suing based on a claimed ownership right to Korean sound recordings.  A

19   Korean court therefore has the strongest local interest in resolving this dispute.

20         *Third*, this Court is already congested and it would be a waste of resources to

21   ask local citizens to serve on a jury for a matter that is so unrelated to this forum.

22   According to publicly accessible records,[9] the median time to trial for civil actions

23   in this District—about 20 months—is longer than in any district within the Ninth

24   Circuit.[10]  It would not serve the public interest to increase that load and further tie

25

26   ──────────────────
     [9]    *United States District Courts – National Judicial Caseload Profile* (2014),
27   http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-
     courts-december-2014.aspx.

28   [10]   Conversely, the typical time to trial for a copyright infringement action in a

─────────────────────────────────────────────
3151505.6                           15

1  up judicial resources with a case that can be more conveniently heard elsewhere.

2  Moreover, it would be a waste of resources to ask the citizens of this District, who

3  have no interest in the matter, to hear a case that has only specious ties to the forum

4  in the first place.

5      Therefore, on balance, the public interest factors weigh heavily in favor of a

6  Korean forum.

7      **4.    This motion should be granted based on *forum non conveniens*.**

8

9      In summary, as CJ E&M America has clearly shown, Korea is an available

10  and adequate forum in which to resolve the present dispute.  It would be far more

11  convenient for the parties to litigate in a Korean court, and conversely, oppressively

12  burdensome for them to do so in this Court.  Moreover, there is no concurrent

13  inconvenience to Plaintiff in bringing an action in its home forum against

14  Defendants, who are amenable to suit there.

15      For these reasons, and because the balance of the private and public interests

16  point toward dismissal, this Court can and should in its broad discretion dismiss

17  Plaintiff's complaint in its entirety so that this lawsuit can be refiled in a Korean

18  court.

19      Alternatively, should this Court elect to consider the substance of Plaintiff's

20  lawsuit, it should nevertheless dismiss Plaintiff's complaint because it lacks

21  standing to sue and in any event has failed to state claims upon which this Court can

22  grant it relief.

23      **B.    Plaintiff Has Failed To State A Claim For Relief.**

24      To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint

25  "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

26  _____

27  Korean court is approximately one year.  (Yang Decl. ¶ 11.)  The 2011 Korean
litigation, for instance, was filed in September 2011 and reached final judgment by

28  August 2012, less than one year later.  (Lee Decl. ¶5.)

that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must therefore contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" and must contain factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell Atlantic Corp.*, 550 U.S. at 555; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  And while the Court must accept as true all well-pleaded factual allegations in the complaint, it need not accept the truthfulness of Plaintiff's legal conclusions.  *Iqbal*, 556 U.S. at 678 (court is "not bound to accept as true a legal conclusion couched as a factual allegation").

### 1.     Plaintiff has failed to state a claim for copyright infringement.

To establish a claim for copyright infringement, Plaintiff has to show: (i) that it owns a valid copyright; and (2) that defendants violated one of the exclusive rights conferred by that valid copyright.  *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1165-66 (C.D. Cal. 2002).

As it relates to its claimed ownership interest in the sound recordings at issue, Plaintiff makes only two conclusory assertions: (1) "[Plaintiff] has ***exclusive license*** to reproduce, distribute, publicly perform and publicly display in the United States numerous works of Korean pop music . . ." (Compl. ¶ 1) (emphasis added); and (2) "Plaintiff has the ***exclusive right*** to reproduce, distribute, publicly perform and publicly display certain sound recordings within the United States" (Comp. ¶ 13) (emphasis added).

Beyond these bare legal conclusions, which this Court should not accept as true, Plaintiff fails to state for each sound recording: from whom it acquired these purported rights, on which dates, and by what instruments.  That is, while it purports to own distribution rights for 303 sound recordings, for *not one* of those does it identify from where those rights came from.  To wit, Plaintiff has not pled *any*

ultimate facts that would establish that it has the "exclusive" rights it claims to have. For instance, under both U.S. and Korean copyright law,[11] copyright ownership vests in the work's original author, unless it was a "work made for hire," in which case it vests in the author's employer.  17 U.S.C. § 201; (Yang Decl. ¶ 6.)  Neither scenario applies here, since Plaintiff is not and makes no claim to be the original owner of the asserted sound recordings.  (*See* Compl. Exh. 1.)  Hence, if Plaintiff holds any rights at all, it must have received them from the original copyright owners, presumably the artists or the artists' management companies.  Yet Plaintiff alleges no facts upon which this Court can infer that Plaintiff has an ownership interest in *any* one of the sound recordings it asserts.[12]

Likewise, Plaintiff's claim fails because Plaintiff has failed to allege any acts by which CJ E&M America has actually infringed Plaintiff's purported overseas distribution rights.  A complaint alleging copyright infringement must "plead with specificity the acts by which a defendant has committed copyright infringement." *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000).  To withstand a motion to dismiss, then, a complaint must allege with specificity "by what acts during what time the defendant[s] infringed the copyright."  *Id.*

Regarding infringement of Plaintiff's purported distribution rights by CJ E&M America, however, Plaintiff's complaint states only that: (1) "Without DFSB Kollective's permission . . . CJ E&M America, Inc. . . . . distributed to the Beats Music service . . . these sound recordings" (Compl. ¶ 2); and (2) "Since around 2014 . . . CJ E&M America . . . distributed to MediaNet (and, through MediaNet, for

---

[11]  While this Court will likely have to apply Korean copyright law to the issue of copyright ownership, it need not choose the applicable law for purposes of this motion: Plaintiff's claims fail under either choice of law.

[12]  For example, under both U.S. and Korean copyright law, a transfer of an interest in copyright must be in a signed writing.  [Cite.]  But Plaintiff does not state in its complaint how it obtained the rights it claims to have—whether by a signed writing or otherwise.

3151505.6

18

10

1  further distribution to the U.S. public) sound recordings, including but not

2  necessarily limited to the nineteen sound recordings by Swallow and Rhymebus"

3  (Compl. ¶ 25).  In other words, Plaintiff's bases its infringement claim against CJ

4  E&M America entirely on the allegation that CJ E&M America provided nineteen

5  sound recordings to Beats Music via MediaNet.[13]  This is insufficient to state a

6  claim for relief.

7       *First*, for those nineteen sound recordings allegedly provided to Beats Music,

8  Plaintiff does not identify specific instances in which any of those recordings were

9  actually downloaded or streamed in the U.S.  Making copyrighted works available

10  for consumption by others does not, by itself, violate the copyright owner's right of

11  distribution.  *See In re Napster, Inc.*, 377 F. Supp. 2d 796, 802 (N.D. Cal. 2005)

12  (copyright owner must prove that defendant "actually disseminated" copies of the

13  copyrighted work to members of the public); *accord Perfect 10 v. Google, Inc.*, 416

14  F. Supp. 2d 828, 844 (C.D. Cal. 2006) ("A distribution of a copyrighted work

15  requires an 'actual dissemination' of copies.")  Plaintiff has not alleged that copies

16  of any of the sound recordings were actually disseminated to the public, i.e., that any

17  distribution occurred.  Therefore, Plaintiff's complaint fails to state a claim for relief

18  against CJ E&M America because among other reasons it has not alleged any acts of

19  actual infringement by CJ E&M America.

20       *Second*, for any *other* sound recordings contained in Exhibit 1 of the

21  complaint or otherwise, Plaintiff has not pled any facts specifically against CJ E&M

22  America to support its claim.  Among other things, Plaintiff fails to describe with

23  sufficient particularity which titles were involved in any other alleged infringement,

24  how they were supposedly infringed, and by what acts.

25  _____

26  [13]  To support its DMCA claim, Plaintiff alleges that "CJ E&M America submitted
ISRCs and UPCs, via MediaNet, to Beats for each of these recordings [that] were

27  different from the ISRCs and UPCs originally and permanently assigned by DFSB

28  Kollective to each of the recordings."  (Compl. ¶ 27.)

1    Thus, Plaintiff has failed to state a claim for copyright infringement against

2  CJ E&M America, and its first cause of action should therefore be dismissed

3  without leave to amend.

4    Furthermore, Plaintiff cannot attribute acts by Defendant CJ E&M, e.g.,

5  operation of the "Mnet" website or other acts, to CJ E&M America based on an

6  enterprise theory of liability because any civil conspiracy claim based on copyright

7  infringement would be preempted by the Copyright Act.  *See, e.g.*, *Laws v. Sony*

8  *Music Entm't, Inc.*, 448 F.3d at 1143.  There are generally only two scenarios in

9  which a defendant can be held secondarily liable for copyright infringement: (1)

10  vicarious infringement and (2) contributory infringement.  Plaintiff has not asserted

11  those causes of action here, likely because its pleadings cannot support either theory.

12  For vicarious copyright infringement, a plaintiff has to show that defendant had the

13  right and ability to supervise the allegedly infringing activity.  *A&M Records, Inc. v.*

14  *Napster Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001).  For contributory infringement, a

15  plaintiff has to show that the defendant specifically knew of the direct infringement

16  and either induced, caused, or materially contributed to it.  *Id.* at 1019.  In addition

17  to its failure to plead an underlying direct infringement, Plaintiff has not pled any

18  facts relating to CJ E&M America's supervision over or inducement of any

19  allegedly infringing acts by CJ E&M.  Hence, to the extent it purports to assert

20  claims against CJ E&M America for alleged acts by CJ E&M, Plaintiff's copyright

21  cause of action should be dismissed without leave to amend on this further

22  independent ground.

23         **2.    Plaintiff has failed to state a claim for violations of the DMCA.**

24

25    Section 1202 of the DMCA prohibits the intentional removal or alteration of

26  any copyright management information with knowledge that doing so "would

27  induce, enable, facilitate, or conceal" copyright infringement.  17 U.S.C. § 1202.  To

28  establish violations of Section 1202 of the DMCA, Plaintiff must show that CJ

E&M America intentionally removed or altered "copyright management information" within the meaning of the statute, knowingly distributed incorrect copyright management information, or knowingly distributed works containing altered or removed copyright management information. *See* 17 U.S.C. § 1202. Plaintiff has failed to state a claim for relief against CJ E&M America because among other reasons: (1) CJ E&M America has not distributed any works; and (2) the information that Plaintiff alleges was altered is not "copyright management information" under the statute.

Plaintiff purports to base its DMCA claim on the following categories of information it alleges was altered: (1) International Standard Recording Codes ("ISRCs"); (2) Universal Product Codes ("UPCs"); (3) sound recording copyright notices; and (4) copyright notices for the underlying works. (Compl. ¶ 50.) Plaintiff alleges that by so doing, CJ E&M America tampered with "copyright management information" in contravention of the DMCA. *Id.* Plaintiff's claim fails.

*First*, as a threshold matter, Plaintiff does not allege that *CJ E&M America* intentionally removed or altered any copyright notices. Rather, it states plainly that "***Beats incorrectly identifies 'CJ E&M'*** or another Korean company, Neowiz Internet, as the owner of the copyrights for these sound recordings . . . ." (Compl. § 28) (emphasis added.) Thus, to the extent it rests its claims on the alleged distribution of works with altered copyright notices, Plaintiff's claim fails because it has failed to plead that CJ E&M America actually distributed any song recordings, with or without copyright notices, as discussed *supra*.

*Second*, ISRCs and UPCs are not "copyright management information." Both UPCs and ISRCs exist independently of copyright. Universal Product Codes are used to track any number of trade items in retail stores, from grocery items to consumer hardware, and not just musical recordings, primarily for inventory. Likewise, ISRCs are used to identify sound recordings "independent of . . . the

1  rights holders involved."[14]  Subsuming these under the definition of "copyright

2  management information" would invite an impossibly broad application of Section

3  1202.  Indeed, this District has applied a narrow interpretation of "copyright

4  management information" that does not encompass ISRCs or UPCs.  *See also*

5  *Textile Secrets Int'l, Inc. v. Ya-ya Brand, Inc.*, 524 F. Supp. 2d 1184, 1201 (C.D.

6  Cal. 2007) (DMCA did not apply to defendant's removal of plaintiff's copyright

7  information from protected work).  To be actionable under the DMCA if altered, the

8  "copyright management information" must "function as a component of an

9  automated copyright or management system."  *IQ Group Ltd. v. Wiesner Publ'g*

10  *Inc.*, 409 F. Supp. 2d 587, 597 (D.N.J. 2006) (a company's logos and hyperlinks did

11  not fall within the definition of "copyright management information" because they

12  were not directed towards an "automated" copyright protection system).  Put

13  differently, the information has to relate to "technological measures" aimed at

14  controlling access to or reproduction of a copyrighted work, such as data encryption

15  on music files that prevent copying.  *Id.* (The technological measures must either

16  "effectively control access to a work or effectively protect[] the right of a copyright

17  owner.").

18       Here, ISRCs and UPCs do not control access to the sound recordings, but

19  merely serve to identify the works for inventory and tracking purposes.  Therefore,

20  since ISRCs and UPCs cannot be "copyright management information" as a matter

21  of law, Plaintiff's DMCA claim must fail as a matter of law.

22       Thus, this Court should dismiss Plaintiff's second cause of action without

23  leave to amend.

24       **C.      Plaintiff Lacks Standing To Sue.**

25       Because "Article III standing is a species of subject matter jurisdiction[,]" a

26  litigant may seek dismissal of an action under Federal Rule of Civil Procedure

27

28  [14]      *What is an ISRC?*, https://www.usisrc.org/about/index.html.

1    12(b)(1) for lack of standing.  *See Cariajano v. Occidental Petroleum Corp.*, 643

2    F.3d 1216, 1227 (9th Cir. 2011) (citation omitted).

3        Under the Copyright Act, only the "legal or beneficial owner" of an exclusive

4    right in a copyright has standing to sue when that right is infringed.  17 U.S.C. §

5    501(b).  This means that, as a matter of timing, the owner can sue for the

6    infringement of a right that occurred only *while it was the owner of that right*.

7    Plaintiff therefore lacks standing to sue for copyright infringement.

8        *First*, as discussed *supra*, Plaintiff has failed to allege facts establishing that it

9    is the owner of any rights in the asserted sound recordings.  It therefore lacks

10   standing to sue based on those sound recordings.

11       *Second*, Plaintiff asserts in its complaint that it has been "assigned the

12   exclusive right to pursue causes of action for infringement ***that have accrued in***

13   ***favor of the copyright owners*** of these works."  (Compl. ¶ 13) (emphasis added).  In

14   other words, Plaintiff purports to bring at least some of its copyright claims on

15   behalf of other parties, i.e., the copyright owners of these works.

16       In *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005), the U.S.

17   Court of Appeals for the Ninth Circuit considered whether the purported transfer of

18   an accrued cause of action, when not accompanied by the transfer of title in the

19   copyrighted work, was sufficient to establish standing, and concluded that it was

20   not.  *Id.* at 890.  Therefore, Plaintiff cannot bring infringement claims for any works

21   for which it did not hold an exclusive substantive right at the time of the alleged

22   infringement.  That is, the bare "right to sue" is insufficient to confer standing for a

23   copyright infringement suit.  *See also Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th

24   Cir. 2013).  Thus, since Plaintiff purports to bring its claims based on causes of

25   action that have accrued in favor of others, its copyright infringement claims should

26   be dismissed for lack of standing without leave to amend.

27   **IV.   CONCLUSION**

28       This Court should not abide Plaintiff's calculated selection of a forum outside

1   its home.  As CJ E&M America has clearly shown, the parties, this Court, and the

2   public would be oppressively burdened by having to try this case here.  Therefore,

3   this Court should dismiss this lawsuit in its entirety so that it can be refiled in a

4   Korean court.

5          In the alternative, this Court should dismiss Plaintiff's complaint without

6   leave to amend because Plaintiff cannot show that it has standing to bring this

7   lawsuit in the first place, and it has not and cannot state claims for which this Court

8   can grant it relief.

9

10  DATED:  April 29, 2015                  Respectfully submitted,

11

12                                          Ekwan E. Rhow
                                            Timothy B. Yoo
13                                          Bird, Marella, Boxer, Wolpert, Nessim,
                                            Drooks, Lincenberg & Rhow, P.C.
14

15                                          By:      /s/ Timothy B. Yoo
16                                                      Timothy B. Yoo
17                                            Attorneys for Defendant
                                             CJ E&M America, Inc.
18

19

20

21

22

23

24

25

26

27

28