BROWNE GEORGE ROSS LLP
Eric M. George (State Bar No. 166403)
  egeorge@bgrfirm.com
Keith Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Andrew A. August (State Bar No. 109741)
  aaugust@bgrfirm.com
Jonathan Gottfried (State Bar No. 282301)
  jgottfried@bgrfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Tel 310.274.7100  --  Fax 310.275.5697

Attorneys for Plaintiff
DFSB Kollective Co. Ltd.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DFSB KOLLECTIVE CO. LTD., a Korean corporation; <br><br>        Plaintiff, <br><br>      vs. <br><br> CJ E&M, INC., a Korean corporation; CJ E&M AMERICA, INC., a California corporation, <br><br>        Defendants. | Case No. 2:15-cv-01650-SVW-FFM <br> Assigned to The Hon. Stephen V. Wilson <br><br> **PLAINTIFF DFSB KOLLECTIVE CO. LTD'S OPPOSITION TO DEFENDANT CJ E&M AMERICA, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR *FORUM NON CONVENIENS*, LACK OF STANDING, AND FAILURE TO STATE A CLAIM FOR RELIEF** <br><br> Date:   June 1, 2015 <br> Time:  1:30 PM <br> Crtrm.:  6 |

525258.1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................ 1

II.  ARGUMENT ................................................................................... 3

   A.   The Court Should Not Dismiss This Case on the Ground of
      *Forum Non Conveniens.* ............................................................ 3

     1.   The Private Interest Factors Do Not Favor Dismissal................. 3

        a.   The Residences of the Parties and Witnesses Do Not
           Favor Dismissal. ......................................................... 3

           (i)   The Parties' Residences Are in the United
               States and Korea......................................... 3

           (ii)   Witnesses of CJ E&M America Are in the
               United States. ............................................ 3

           (iii)   Key Witnesses of MediaNet Are in the United
               States. ...................................................... 5

           (iv)   Important Witnesses of Beats Music Service
               Are in the United States. ............................ 6

           (v)   The United States Is Convenient for the
               Witness of DFSB. ...................................... 6

           (vi)   Witnesses of CJ E&M Are in Korea......................... 6

           (vii)   Original Holders of Copyrights Are in Korea. ......... 7

        b.   The Forum's Convenience to the Litigants Does Not
            Favor Dismissal. ......................................................... 7

        c.   Access to Physical Evidence and Other Sources of
            Proof Does Not Favor Dismissal........................................ 8

        d.   Whether Unwilling Witnesses Can Be Compelled to
            Testify Does Not Favor Dismissal. ................................... 9

        e.   The Cost of Bringing Witnesses to Trial Does Not
            Favor Dismissal. ....................................................... 11

        f.   The Enforceability of the Judgment Does Not Favor
            Dismissal. ................................................................ 12

        g.   An Efficient Resolution of This Dispute Does Not
            Favor Dismissal. ....................................................... 12

# TABLE OF CONTENTS
## (Cont'd)

Page

2.     The Public Interest Factors Do Not Favor Dismissal. ................. 13

    a.     The Local Interest in the Lawsuit Does Not Favor Dismissal. .......................................................... 13

    b.     The Court's Familiarity with the Governing Law Does Not Favor Dismissal.................................. 14

    c.     The Burden on Local Courts and Juries Does Not Favor Dismissal. ............................................. 15

    d.     Congestion in the Court Does Not Favor Dismissal. ........ 15

    e.     The Costs of Resolving a Dispute Unrelated to a Particular Forum Does Not Favor Dismissal. ................. 16

B.     The Court Should Not Dismiss the Claim for Copyright Infringement under Rule 12(b)(6). ...................................................... 17

C.     The Court Should Not Dismiss the DMCA Claim Under Rule 12(b)(6). .............................................................................. 21

D.     Contrary to Defendant's Argument, DFSB Has Standing to Sue.......... 24

III.     CONCLUSION .................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## <u>FEDERAL CASES</u>

4

*A&M Records, Inc v. Napster, Inc.,*

5     239 F.3d 1004 (9th Cir. 2001) ................................................................. 19

6

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.,*

7     944 F.2d 971 (2d Cir. 1991) ................................................................... 25

8

*Agence France Presse v. Morel,*

9     769 F. Supp. 2d 295 (S.D.N.Y. 2011) .................................................... 23

10   *Allstate Life Ins. Co. v. Linter Grp. Ltd.,*

11     994 F.2d 996 (2d Cir. 1993) ................................................................... 12

12   *Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.,*

13     940 F. Supp. 554 (S.D.N.Y. 1996) ..................................................... 7, 11

14   *Astra Aktiebolag v. Andrx Pharm., Inc.,*

15     208 F.R.D. 92 (S.D.N.Y. 2002) .............................................................. 10

16   *Baumgart v. Fairchild Aircraft Corp.,*

     981 F.2d 824 (5th Cir. 1993) ................................................................... 12

17

*Boston Telecommunications Grp., Inc. v. Wood,*

18     588 F.3d 1201 (9th Cir. 2009) ................................................................ 13

19

*Brown v. Stroud,*

20     No. C 08-02348 JSW,

21     2011 WL 2600661 (N.D. Cal. June 30, 2011) ....................................... 23

22   *Carijano v. Occidental Petroleum Corp.,*

     643 F.3d 1216 (9th Cir. 2011) ................................................................. 4

23

*Creager v. Yoshimoto,*

24     No. C 05-01985 JSW,

25     2006 WL 680555 (N.D. Cal. Mar. 14, 2006) .......................................... 9

26   *Creative Tech. Ltd. v. Aztech System Pte., Ltd.,*

27     61 F.3d 696 (9th Cir. 1995) .................................................................... 14

28

# TABLE OF AUTHORITIES

**Page(s)**

*Data Cash Sys., Inc. v. JS&A Group, Inc.*,
   628 F.2d 1038 (7th Cir. 1980) ............................................................................. 19

*Dole Food Co. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ............................................................................. 7

*Electrical Construction & Maintenance Co. v. Maeda Pacific Corp.*,
   764 F.2d 619 (9th Cir.1985) ............................................................................. 22

*Fox v. Hildebrand*,
   No. CV092085DSFVBKX,
   2009 WL 1977996 (C.D. Cal. July 1, 2009) ....................................................... 23

*In re Cathode Ray Tube (CRT)*,
   No. CV-12 80 151 MISC,
   2012 WL 6878989 (N.D. Cal. Oct. 22, 2012) ..................................................... 10

*In re Napster*,
   377 F. Supp. 2d 796 (N.D. Cal. 2005) ......................................................... 19, 20

*In re Sik Choi v. Hyung Soo Kim*,
   50 F.3d 244 (3d Cir. 1995) ............................................................................. 12

*Intel Corp. v. Advanced Microdevices, Inc.*,
   542 U.S. 241 (2004) ............................................................................. 10

*IQ Group Ltd. v. Wiesner Publ'g Inc.*,
   409 F. Supp. 2d 587 (D.N.J. 2006) ............................................................... 23

*King.com Ltd. v. 6 Waves LLC*,
   No. C-13-3977 MMC,
   2014 WL 1340574 (N.D. Cal. Mar. 31, 2014) .................................. 3, 15, 16, 17

*Lockman Found. v. Evangelical Alliance Mission*,
   930 F.3d 764 (9th Cir. 1991) ............................................................... 11

*Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*,
   24 F.3d 1368 (Fed. Cir. 1994) ............................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

*Marvullo v. Gruner & Jahr*,
    105 F. Supp. 2d 225 (S.D.N.Y. 2000) ................................................................ 18

*Nat'l Shopmen Pension Fund, v. Stamford Iron & Steel Works, Inc.*,
    999 F. Supp. 2d 229 (D.D.C. 2013) ............................................................. 9, 12

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ....................................................................... 20

*Perfect 10 v. Google, Inc.*,
    416 F. Supp. 2d 828 (C.D. Cal. 2006) ....................................................... 19, 20

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ........................................................................................ 3

*Prevision Integral de Servicios Funerarios, S.A. v. Kraft*,
    94 F. Supp. 2d 771 (W.D. Tex. 2000) ............................................................. 9

*Ravelo Monegro v. Rosa*,
    211 F.3d 509 (9th Cir. 2000) ........................................................................... 3

*Rodriguez v. Samsung Electronics Co.*,
    734 F. Supp. 2d 220 (D. Mass. 2010) ...................................................... 11, 14

*Samyang Food Co. v. Pneumatic Scale Corp.*,
    No. 5:05-CV-636,
    2005 WL 2711526 (N.D. Ohio Oct. 21, 2005) ............................................. 12

*Silvers v. Sony Pictures Entm't, Inc.*,
    402 F.3d 881 (9th Cir. 2005) ..................................................................... 24, 25

*Textile Secrets Int'l, Inc., v. Ya-ya Brand, Inc.*,
    524 F. Supp. 2d 1184 (C.D. Cal. 2007) .............................................. 22, 23, 25

*Vivendi SA v. T-Mobile USA Inc.*,
    586 F.3d 689 (9th Cir. 2009) ........................................................................... 4

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL STATUTES

17 U.S.C.
  § 106 .................................................................................. 18, 24
  § 411 ........................................................................................ 24
  § 501 ........................................................................................ 24
  § 1202 ....................................................................... 21, 22, 23

28 U.S.C. § 1782 ....................................................................... 10

Digital Millennium Copyright Act ................................................ *passim*

## RULES

Fed. R. Civ. P.
  12(b)(1) ..................................................................................... 2
  12(b)(6) ............................................................................... 17, 21
  30(b)(6) ..................................................................................... 6

Local Rules
  7-5(b) ........................................................................................ 6
  83-6.3.2 ................................................................................... 12

## REGULATIONS

37 C.F.R.
  210.17(d)(3)(iii) ...................................................................... 22
  210.17(d)(3)(B) ....................................................................... 22

## OTHER AUTHORITIES

1 M. Nimmer, Nimmer on Copyright
  Sec. 4.13[A][1] at 4–80 ......................................................... 18
  Sec. 8.11[B][4][c] at 8-202 .................................................... 19
  Sec. 8.11[C][2] at 8-215 ......................................................... 19
  Sec. 8.11[C][3] at 8-216 ......................................................... 20

Eric Ilhyung Lee, *Expert Evidence in the Republic of Korea and Under the U.S. Federal Rules of Evidence: A Comparative Study*, 19 Loy. L.A. Int'l & Comp. L.J. 585 (1997) ................................................................ 10

## I.    INTRODUCTION

The private and public interest factors weigh against dismissal of this case on the ground of *forum non conveniens*, as illustrated by the following:

- Defendant CJ E&M America, Inc., which is based in Los Angeles, distributed infringing sound recordings and false copyright management information to American companies (*e.g.,* Beats Music) in California.  Although defendant claims that its involvement with Korean music in the U.S. was limited to "sporadically promot[ing] the Beats Music Service" in 2014, publicly available information indicates that CJ E&M America was closely involved with the distribution of sound recordings to the U.S. public.

- The infringement occurred in the United States, not in Korea.  Plaintiff DFSB Kollective Co. Ltd. ("DFSB") does not distribute the music at issue within Korea.  Its primary market is the United States where its principal business partners are in California.  Nor is there any suggestion that defendants were prohibited from distributing the music at issue within Korea.

- If this action were filed in Korea, then important third-party witnesses in the United States could not be compelled to testify in depositions or at trial.  In contrast, if this action remains in the United States, then third-party witnesses in Korea could be compelled to testify in depositions.

- Defendant identifies only a single witness by name in Korea—a CJ E&M employee who is proficient in English.  Discovery on this and other witnesses in Korea will be less convenient if this case were transferred to Korea because that country has limited discovery and does not permit depositions.

- Because the infringement occurred within the United States, a Korean judge would apply American substantive law if this case were filed in Korea.  This emphasizes that the focus of this case is here.  The application of foreign law by a court will not be avoided if this case were filed in Korea.

- The primary evidence in this case consists of documents in English and Korean, which can be easily transported anywhere.

Even defendant's summary of this case emphasizes its ties to the United States:

> Plaintiff asserts claims for copyright infringement and violations of the DMCA . . . based on three categories of alleged bad acts: (1) distribution of music in the U.S. through the Beats Music service; (2) altering information relating to the music distributed through Beats Music; and (3) distribution of music in the U.S. through the 'Mnet' website. . . . .

-1-

1  (Memo. at 5:14-18)[1]

2      In rebutting the significant ties between this case and forum, defendant relies

3  upon a misrepresentation.  Contrary to defendant's unsupported assertion (Memo. at

4  1:17-18), DFSB did not file claims for copyright infringement against CJ E&M

5  Corp. in Korea in 2011.  Instead, DFSB sued CJ E&M Corp. in Korea for breach of a

6  Korean music-distribution contract between DFSB and CJ E&M.  In contrast to this

7  case, DFSB did not claim in the Korean dispute to have exclusive distribution rights

8  to any of the music at issue.  In contrast to this case, there was no mention in the

9  Korean dispute of falsified copyright notices, Beats Music, MediaNet, or anything or

10  anyone in the United States.  Although defendant claims that DFSB is forum

11  shopping by filing suit in the U.S., the facts demonstrate otherwise:  when DFSB had

12  a Korean-focused dispute, it pursued litigation in Korea.

13      Consequently, the Court should deny defendant's 12(b)(6) motion, which

14  seeks dismissal of this case so that a Korean court can apply American copyright law

15  to determine whether a Los Angeles-based defendant:  (1) falsified copyright

16  information via a California company (Beats Music), and (2) infringed recordings

17  registered with the U.S. Copyright Office by distributing them for the American

18  public.  The Court should also deny defendant's motion to dismiss under Fed. R. Civ.

19  P. 12(b)(1) because:  (1) DFSB has stated a valid claim for copyright infringement

20  and violations of the Digital Millennium Copyright Act, and (2) DFSB has standing

21  to sue.

22  _____

23  [1] The following abbreviations are used in this brief:  (1) Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss ("Memo.");

24  (2) Declaration of B. Cho in Support of Plaintiff's Opposition to Motion to Dismiss ("Cho Decl."); (3) Request for Judicial Notice by DFSB Kollective Co. Ltd.

25  ("RJN"); (4) Declaration of S. Jo in Opposition to Motion to Dismiss ("Jo Decl.");

26  (5) Declaration of H. Yang in Support of Motion to Dismiss ("Yang Decl.");

27  (6) Declaration of D. Lee in Support of Motion to Dismiss ("Lee Decl."); and (7) Declaration of A. Killoren in Support of Motion to Dismiss ("Killoren Decl.").

28

## II.    ARGUMENT

### A.    The Court Should Not Dismiss This Case on the Ground of *Forum Non Conveniens.*

DFSB does not claim that Korea prohibits litigation on the subject matter of this dispute or that a remedy in Korea would be clearly unsatisfactory.  But, as discussed below, Korea is not a more appropriate forum than the United States in light of the private and public-interest factors as applied to this case.

#### 1.    The Private Interest Factors Do Not Favor Dismissal.

##### a.    The Residences of the Parties and Witnesses Do Not Favor Dismissal.

###### (i)    The Parties' Residences Are in the United States and Korea.

The strong presumption in favor of the plaintiff's choice of forum applies with less force when the plaintiff is foreign.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)  "But less deference is not the same thing as no deference." *Ravelo Monegro v. Rosa,* 211 F.3d 509, 514 (9th Cir. 2000) (granting deference to foreign plaintiff's choice of forum).  Plaintiff DFSB is a Korean citizen, and its choice of forum therefore weighs somewhat against dismissal.

The residence of defendant CJ E&M America in Los Angeles (Compl. ¶ 8) further weighs against dismissal.  It is true that CJ E&M resides in Korea (*id*. ¶ 7); but the parties' residences, overall, weigh against dismissal.  *See, e.g., King.com Ltd. v. 6 Waves LLC,* No. C-13-3977 MMC, 2014 WL 1340574, at *4 (N.D. Cal. Mar. 31, 2014) (concluding that "the residence of the parties weighs slightly against dismissal" where the plaintiff and one defendant were foreign corporations, while one defendant was American).

###### (ii)  Witnesses of CJ E&M America Are in the United States.

CJ E&M America is based in Los Angeles.  (Compl. ¶ 8)  CJ E&M America and CJ E&M distributed infringing sound recordings and false copyright

management information from Los Angeles to MediaNet and Beats.  (Compl. ¶¶ 25, 26, 28)  Witnesses in the United States from CJ E&M America are expected to testify about:  (1) their providing of infringing recordings and false ISRCs, UPCs and copyright notices to MediaNet from Los Angeles, (2) revenues that they received from distribution of infringing works, and (3) how they created the false copyright information.

CJ E&M America submitted an affidavit rebutting the allegations regarding liability in the Complaint.  But that is improper.  For purposes of a *forum non conveniens* analysis, a court must accept the truth of the facts regarding liability as alleged by the plaintiff.  *See, e.g., Carijano v. Occidental Petroleum Corp*., 643 F.3d 1216, 1222 (9th Cir. 2011) (accepting as true facts alleged in plaintiff's complaint upon review of motion to dismiss for *forum non conveniens*); *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 691 n.3 (9th Cir. 2009) (same).  The wisdom of this rule is evident in this case, where public information undermines defendant's assertions but discovery is necessary to uncover more evidence.  Although the declaration of CJ E&M America's witness claims that the company's involvement with Korean music in the U.S. was limited to "sporadically promot[ing] the Beats Music Service" in 2014  (Killoren Decl. ¶ 6), that is inaccurate.  CJ E&M America organizes the largest American event for Korean pop music (KCON), which takes place in Los Angeles, and it disseminates Korean music programming on television in the United States, including what it describes as the "World No. 1 K.Pop Chart Show."  (Cho Decl. ¶ 8 & Exs. 12-14)  In addition, publicly available information indicates a close connection between CJ E&M America, CJ E&M, Beats and the infringing music.  For example, CJ E&M America administers a website, MnetAmerica.com, from Los Angeles.[2]  In 2014, Beats Music publicly announced a "big welcome to

_____

[2] The website, mnetamerica.com, is administered by Seung Chang, an accounting manager at CJ E&M America in Los Angeles.  (Cho Decl. Exs. 8 & 9)

(footnote continued)

@MnetAmerica" and its "collection of #K[orean] Pop hits and artists." (Cho Decl. Ex. 2)  And CJ E&M America has told its consumers to follow its curated lists of Korean pop music on Beats.  (*Id.* Exs. 3-5) These curated lists contain infringing works, such as music by DJ Doc.  (*Id.* Ex. 6 (music program on Beats created by CJ E&M containing infringing music); Ex. A to Complaint, listing infringing music)) Furthermore, CJ E&M America has used its website to steer U.S. consumers to cheap, infringing music on CJ E&M's website, mnet.com.  (Cho. Decl. ¶ 7 & Ex. 7 (explaining how Americans can use CJ E&M America's website to download music from mnet.com))  Contrary to defendant's claims, CJ E&M America is very involved with Korean pop music in the United States and is important to this case.

**(iii) Key Witnesses of MediaNet Are in the United States.**

MediaNet is an American company with an office in Los Angeles.  (Compl. ¶ 24)  It is central to this case because its employees received infringing sound recordings and inaccurate copyright notices, ISRCs and UPCs from defendants, which MediaNet then provided to Beats.  (*Id.* ¶¶ 24-25, 27)  These facts form a primary basis of DFSB's claims for copyright infringement and violations of the DMCA.  (*Id.* ¶¶ 41, 50)  Key witnesses in Los Angeles and elsewhere in the United States from MediaNet are expected to testify about:  (1) how and from whom they received infringing sound recordings and inaccurate copyright management information, (2) revenues paid to defendants for the infringing works, and (3) how these sound recordings were further distributed to Beats and American consumers.[3]

---

Mnetamerica.com is also registered to "CJ CGV," which was the prior name of CJ E&M America.  (Cho Decl. Ex. 8; RJN Ex. 1)
[3] Defendant claims that discovery on Beats and MediaNet is unnecessary because "any relevant evidence they have are equally accessible from Defendant CJ E&M." (Memo. at 12:22-23)  That is speculation, and DFSB should be allowed to verify or rebut defendants' claims with information from third parties.

**(iv) Important Witnesses of Beats Music Service Are in the United States.**

The California-based Beats Music service has distributed music to American consumers, including the infringing works at issue in this case.  (Compl. ¶¶ 2, 23, 27)  Beats is not available in South Korea.  (*Id*. ¶ 23)  Screenshots from Beats of false copyright management information are attached to the Complaint.  (Compl. Ex. 3)  Defendant acknowledges that "[h]ow and which music was provided to those platforms [Beats], and when [and] by whom it was provided, are therefore central issues."  (Memo. at 6:6-8)  Witnesses in the United States from Beats are expected to testify about:  (1) how and from whom they received infringing sound recordings and inaccurate copyright management information, (2) how these recordings were further distributed to American consumers, and (3) revenues provided to defendants from these infringing recordings.  Like the witnesses from MediaNet, the witnesses from Beats are important to the claims for copyright infringement and under the DMCA.

**(v)  The United States Is Convenient for the Witness of DFSB.**

Bernie Cho, the head of DFSB, will be a key witness who will testify about the licensing of the music in the United States and damages caused by defendants.  He is an American citizen who regularly visits the United States.  (Cho Decl. ¶ 1)

**(vi) Witnesses of CJ E&M Are in Korea.**

Defendant identifies only one witness relevant to its case at CJ E&M in Korea:  Mr. Lee, who is in charge of music licensing.[4]  (Memo. at 11:12)  Based on his declaration, he is proficient in English.  (Lee Decl.)  DFSB will likely depose Mr. Lee or a representative under Fed. R. Civ. P. 30(b)(6) but does not anticipate many witnesses from CJ E&M.

---

[4] Under L.R. 7-5(b), defendant was required to submit the evidence upon which it intends to rely when it filed its motion.  Consequently, defendant cannot identify new witnesses in its reply.

**(vii) Original Holders of Copyrights Are in Korea.**

Defendant states that it may conduct discovery on an unspecified number of "artists, the artists' management companies, or some other third party who originally held the rights" in order to explore DFSB's "purported ownership claims to the copyrights at issue." (Memo. at 11:21-24)  But defendant acknowledges that "under both U.S. and Korean copyright law, a transfer of an interest in copyright must be in a signed writing" (Memo. at 18:26-27); and DFSB and defendant claim to have written licensing agreements for the music at issue (Lee Decl. ¶¶ 9-10; Cho Decl. ¶ 1).  There is no indication that third parties in Korea are material to understanding these agreements (*e.g.,* by providing parol evidence).[5]  *See Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.,* 940 F. Supp. 554, 564 (S.D.N.Y. 1996) (declining to dismiss on grounds of *forum non conveniens* when, among other factors, "the relevance of the many witnesses [abroad] is indeterminate at this time").  Furthermore, the parties would be unable to depose these third parties if this suit were filed in Korea because Korea does not permit discovery depositions.  (Jo Decl. ¶ 8)  And even if certain discovery were easier in Korea, "[f]orum non conveniens is an exceptional tool to be employed sparingly, not a doctrine that compels plaintiffs to choose the optimal forum for their claim."  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (internal quotation marks and brackets omitted).

***

The need for third-party American witnesses is clear; while the necessity of third-part Korean witnesses is speculative.  This factor weighs against dismissal.

**b.    The Forum's Convenience to the Litigants Does Not Favor Dismissal.**

---

[5] At least one of the agreements submitted by defendant disclaims parol evidence. (translation available at Cho Decl. Ex. 11 at Ex. D, Article 16)

By virtue of the fact that DFSB filed suit in this forum, it is convenient for DFSB.  This forum is also convenient for CJ E&M America, which is based in Los Angeles.  (Compl. ¶ 8)  While Korea may be a more convenient forum for CJ E&M, two out of three of the litigants have no reasonable objection to the convenience of this forum.

### c.   Access to Physical Evidence and Other Sources of Proof Does Not Favor Dismissal.

The evidence in this case will primarily consist of documents.  This evidence—much of which is in English—will likely consist of:

- English-language evidence from the American companies, MediaNet and Beats, regarding the infringing works and false copyright management information that they received from CJ E&M America and CJ E&M.  (Compl. ¶¶ 24, 25, 27)  This will likely include:  (i) English-language emails to/from defendants regarding the infringing works, (ii) evidence of revenues collected from California-based Beats in connection with the infringing works, and (iii) images from the Beats Music website falsely identifying defendants as copyright owners based on information submitted to Beats by defendants (*see, e.g.,* Ex. 3 to Complaint).

- Korean-language license agreements regarding the sound recordings for distribution in the United States.  Although defendant suggests that the Court will struggle to interpret these Korean contracts, translations of the contracts submitted by defendant do not indicate that their interpretation poses significant obstacles. *See* Cho Decl. Ex. 11 (translating Lee Decl. Exs. B-D).

- The English-language user agreement for Mnet.com directed to U.S. consumers. (*Id*. ¶ 33)

- English-language, online commercials for Mnet.com directed to U.S. consumers. (*Id*. ¶ 34)

- English-language online, credit-card submission forms for Mnet.com, which accepts American credit cards.  (*Id*. ¶ 33)

- A Korean-language judgment from 2012 from a court in South Korea against CJ E&M.  (*Id*. ¶ 29)

- A Korean-language notice from the International Federation of the Phonographic Industry against Mnet.  (*Id*. ¶ 36)

- English-language evidence regarding prices of the sound recordings on iTunes versus other American music platforms, such as Beats.  (*Id.* ¶ 39)

- English-language evidence of ISRCs obtained from the International Federation of the Phonographic Industry in London.  (*Id.* ¶ 19)

- English-language copyright registrations from the U.S. Copyright Office.  (*Id.* ¶ 14)

While many of these documents are located in the United States, the location of documents (most of which are likely to be digitized) is less significant than was previously the case.  *See Nat'l Shopmen Pension Fund, v. Stamford Iron & Steel Works, Inc.*, 999 F. Supp. 2d 229, 233 (D.D.C. 2013) ("[T]he location of documents is increasingly irrelevant in the age of electronic discovery, when thousands of pages of documents can be easily digitized and transported to any appropriate forum."). Furthermore, the fact that certain documents will have to be translated between Korean and English does not favor dismissal.  *See Prevision Integral de Servicios Funerarios, S.A. v. Kraft,* 94 F. Supp. 2d 771, 779 (W.D. Tex. 2000) (denying dismissal on ground of *forum non conveniens* despite need to translate documents and provide interpreters for witnesses because "this Court works around such language limitations every day with minimal inconvenience to the Court and parties").[6]  Regardless of whether this case is tried in California or Korea, translation will be necessary.

### d.   Whether Unwilling Witnesses Can Be Compelled to Testify Does Not Favor Dismissal.

In this analysis, "[r]ather than focus on the specific number of witnesses, the

---

[6] Defendant cites *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux,* 24 F.3d 1368 (Fed. Cir. 1994) to argue that the difficulty of translation supports dismissal.  (Memo. at 11:8-11)  But that case involved a complex patent in Japanese relating to "electronic coin discriminators with programmable memories."  *Mars,* 24 F. 3d at 1370.  A patent's hyper-technical language contrasts with the relatively short commercial contracts and judgment in Korean that will have to be translated in this case.

Court 'examine[s] the materiality and importance of the anticipated witnesses' testimony and then determine[s] their accessibility and convenience to the forum.'" *Creager v. Yoshimoto*, No. C 05-01985 JSW, 2006 WL 680555, at *2 (N.D. Cal. Mar. 14, 2006). This factor weighs against dismissal. While witnesses are located in both Korea and the United States, no witnesses' deposition testimony would be available in Korea; third-party witnesses central to DFSB's case are located in the United States and would be unavailable in Korea; and any witnesses in Korea could be deposed if this action remained in the United States.

If this case were filed in Korea, then the parties would not be able to depose any employee of MediaNet or Beats because Korea does not permit depositions. (Jo Decl. ¶ 8) *See also Astra Aktiebolag v. Andrx Pharm., Inc.,* 208 F.R.D. 92, 102 (S.D.N.Y. 2002) ("The fact is that vastly different discovery practices, which permit only minimal discovery, are applicable to civil suits conducted in Korea."); Eric Ilhyung Lee, *Expert Evidence in the Republic of Korea and Under the U.S. Federal Rules of Evidence: A Comparative Study*, 19 Loy. L.A. Int'l & Comp. L.J. 585, 600, 610 (1997) (explaining that the Korean "Code of Civil Procedure does not, however, provide for equivalents to depositions" of fact or expert witnesses). While defendant claims that DFSB could invoke 28 U.S.C. § 1782 from Korea to obtain evidence in the United States (Memo. at 12 n.7), one court in this Circuit recently rejected such a request. *See In re Cathode Ray Tube (CRT)*, No. CV-12 80 151 MISC, 2012 WL 6878989 (N.D. Cal. Oct. 22, 2012), report and recommendation adopted, MDL 1917, 2013 WL 183944 (N.D. Cal. Jan. 17, 2013). In *CRT*, a party in a lawsuit in Korea sought documents from a U.S. law firm by invoking Section 1782. *Id*. at *1. Applying the factors outlined by the Supreme Court in *Intel Corp. v. Advanced Microdevices, Inc*., 542 U.S. 241 (2004), the court explained: "Korea permits only limited discovery in its courts. That in itself should indicate that the policy of Korea is not to engage in or permit the broad discovery that exists in United States federal courts." *Id*. at *3. In denying the request under Section 1782, the court stated that

"the different scopes of permitted discovery demonstrate that use of United States generated discovery would circumvent the limitations of proof-gathering in existence in the Korean court." *Id.*

Moreover, if this case were filed in Korea, a Korean court could not compel these American witnesses to appear at trial. (Jo Decl. ¶ 10) *See also Rodriguez v. Samsung Electronics Co.*, 734 F. Supp. 2d 220, 226 (D. Mass. 2010) (denying motion to dismiss on grounds of *forum non conveniens* to Korea after explaining that witnesses in America "would be unavailable to provide live testimony at a trial in Korea").

In contrast, if this case remains in the United States, then non-party witnesses in Korea, to the extent they are necessary, may be compelled to testify for depositions via the Hague Evidence Convention, to which Korea is a party.[7]  (Jo Decl. ¶ 14) *See also Anglo Am. Ins. Grp.*, 940 F. Supp. at 564 ("While proceeding under the Hague Convention is more time-consuming than compelling witnesses subject to process under the Federal Rules of Civil Procedure in the United States, [this] burden does not reach the requisite level of oppressiveness or vexatiousness" for dismissal under *forum non conveniens*).

### e.   The Cost of Bringing Witnesses to Trial Does Not Favor Dismissal.

If witnesses from CJ E&M were to testify at trial in person, they would travel from Korea to California.  But trans-Pacific travel is inevitable in this case.  If DFSB filed its case in Korea, then witnesses from CJ E&M America would have to travel from California to Korea.  Consequently, it is unlikely that filing this suit in Korea will save costs on witness travel relative to maintaining this lawsuit in California.[8]

---

[7] *See* Hague Evidence Convention—Acceptances of Accessions as of April 7, 2015 (available at http://www.hcch.net/upload/overview20e.pdf).

[8] This contrasts with *Lockman Found. v. Evangelical Alliance Mission*, 930 F.3d 764
(footnote continued)

Furthermore, if this case remains in the United States, then witnesses can be deposed and "the physical location of witnesses is less important when testimony may be taken by deposition (including by deposition *de bene esse*) and presented to the Court at either the summary judgment stage or a trial.  Witnesses may also testify in this Court at trial via live videoconference."  *Nat'l Shopmen Pension Fund*, 999 F. Supp. 2d at 233.  *See also* L.R. 83-6.3.2 (allowing video-recorded testimony to be used at trial).

### f.     The Enforceability of the Judgment Does Not Favor Dismissal.

Any judgment against CJ E&M rendered by this Court will be enforceable in Korea. (Jo Decl. ¶ 11)  *See also In re Sik Choi v. Hyung Soo Kim*, 50 F.3d 244, 248 (3d Cir. 1995); *Samyang Food Co. v. Pneumatic Scale Corp.,* No. 5:05-CV-636, 2005 WL 2711526, at \*11 (N.D. Ohio Oct. 21, 2005).

### g.     An Efficient Resolution of This Dispute Does Not Favor Dismissal.

Defendant asserts that Neowiz Internet, "a Korean third-party from whom CJ E&M obtains some of its music content" may need to be impleaded (Memo. at 12:11-19).  Although defendant speculates that the Court lacks jurisdiction over Neowiz, that is doubtful.  Neowiz registered as a business in California in 2009 (although it is now dissolved) and, up until recently, had an officer in Los Angeles.[9]

_____

(9th Cir. 1991), which defendant cites (Memo. at 7:28-8:1).  In *Lockman*, the Ninth Circuit upheld a dismissal under *forum non conveniens* that involved "scores of Japanese bankers, accountants and church officials" and "all formal distribution channels…in Asia."  *Id*. at 770 (internal quotation marks omitted).

[9] In contrast, in the cases cited by CJ E&M in which the inability to implead favored dismissal, it was clear that the third parties could not be impleaded.  *See Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 998, 1002 (2d Cir. 1993) (Australian companies had been dismissed, after extensive briefing and oral argument, "on the ground of comity" and it was therefore not possible to implead them); *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 836 (5th Cir. 1993) (concluding that impleader was not possible in Texas court of German citizen's estate and regional

(footnote continued)

(RJN Ex. 2; Cho Decl. Ex. 10)  Yet even if CJ E&M is unable to implead Neowiz, this is not determinative in light of the numerous factors weighing against dismissal. *See Boston Telecommunications Grp., Inc. v. Wood,* 588 F.3d 1201, 1211 (9th Cir. 2009) ("Nevertheless, the fact that [defendant] may be unable to implead alleged joint tortfeasors in California is by no means determinative of the *forum non conveniens* inquiry….").

### 2.    The Public Interest Factors Do Not Favor Dismissal.

#### a.    The Local Interest in the Lawsuit Does Not Favor Dismissal.

A district court "need not hold . . . that California is the principal locus of the case or that California has more of an interest than any other jurisdiction in order to conclude that California has a meaningful interest in this litigation." *Boston Telecomms. Grp.*, 588 F.3d at 1212 (internal quotation marks omitted).  Rather, as to this factor, the court "ask[s] only if there is an identifiable local interest in the controversy." *Id.* (finding California had interest in case where plaintiff's "claims [were] rooted in a course of conduct that took place over several years and in multiple locations around the globe, including California").

This district has a local interest in this litigation.  This case concerns copyright infringement and violations of the DMCA perpetrated by two defendants, one of whom is a Los-Angeles-based company.  False copyright management information was submitted "from Los Angeles and elsewhere."  (Compl. ¶ 28)  The sound recordings and copyright information were distributed to a California-based company and a Delaware corporation with an office in Los Angeles.  (*Id*. ¶¶ 2, 24, 28)  Furthermore, the infringing sound recordings have been directed, via English-language advertisements, payment systems and websites, to U.S. consumers.  (*Id*. ¶¶ 34, 37)  Although the plaintiff is a Korean corporation, it distributes music to the United States (which is its primary market), not Korea; and its principal American

_____

airline operating in Germany).

business partners are in California  (Cho Decl. ¶ 1)  While Korea may have an interest in some aspects of this lawsuit, its government "has indicated its support for Korean companies to pursue legal actions in the United States that seek to stop the illegal, online distribution of Korean music to the United States."  (Compl. ¶ 12)  Furthermore, Korean pop music is popular not only in Korea; it is successful in Los Angeles and throughout the United States.  Los Angeles hosts two of the largest Korean music events in the United States – the Korean Music Festival at the Hollywood Bowl (18,000+ attendees) and KCON at the LA Memorial Sports Arena/Staples Center (40,000+ attendees).  (Cho Decl.  ¶ 8)

This case is distinguishable from *Creative Technology*, which defendant cites (Memo at 14:4-19).  That case involved:  exclusively Singapore parties, copyright design infringement (reproduction of sound cards) that occurred in Singapore, a more advanced parallel action for copyright infringement in Singapore courts, and no substantial involvement by American companies.  *Creative Tech. Ltd. v. Aztech System Pte., Ltd.*, 61 F.3d 696, 699, 703-04 (9th Cir. 1995).  In contrast, DFSB's case involves a mix of Korean and American parties, infringement that occurred in the United States (and not in Korea), no advanced parallel action in Korean courts, and substantial involvement of American companies.

    **b.**  **The Court's Familiarity with the Governing Law Does Not Favor Dismissal.**

The majority of the legal analysis will be under American law since the infringement occurred here.  So dominant is American law in this case that, even if this case is filed in Korea, a Korean judge will apply American law:  an outcome all of the parties acknowledge.  *See* Jo Decl. ¶ 13 ("[I]n a copyright infringement action involving infringements that occurred in California, a Korean court most likely would need to apply United States copyright laws to decide the case."); Memo. at 13:26-28 ("[T]he issue of whether the work was infringed is often governed by the laws of the country in which the alleged infringement occurred."); Yang Decl. ¶ 10

1   (same).  While Korean law may need to be applied to certain issues, that does not

2   dictate dismissal.  *See Rodriguez*, 734 F. Supp. 2d at 228 (denying motion to dismiss

3   under *forum non conveniens* even though "Korean law may apply" to certain issues).

4       Furthermore, defendant is incorrect to argue that the existence of a settlement

5   agreement from 2012 in Korea between DFSB and CJ E&M favors dismissal of this

6   case.  (Memo. at 1:15-25)  That dispute involved only breaches of a Korean contract

7   between DFSB and CJ E&M based on pre-2013 conduct. (Cho Decl. ¶ 3 & Ex. 1;

8   Compl. ¶ 29).  DFSB had licensed distribution rights for music from CJ E&M, but

9   DFSB then learned that CJ E&M lacked those rights for which DFSB was paying a

10  fee.  (*Id.*)  There was no claim for copyright infringement under American or Korean

11  law because CJ E&M did not purport to have exclusive licenses to the music.  (Cho

12  Decl. ¶ 3 & Ex. 1)   In contrast, this case involves infringement of DFSB's exclusive

13  distribution rights in the United States and infringement that post-dates 2013.

14  (Compl. ¶ 25)  The claims do not arise from a contractual dispute.

**c.      The Burden on Local Courts and Juries Does Not Favor
Dismissal.**

17      As discussed in connection with the first public-interest factor, California has a

18  substantial connection to this case.  Consequently, there would not be an unfair

19  burden on local juries.  And although the Central District of California is very busy

20  and it is impossible to predict the course of litigation, civil cases increasingly settle.[10]

21  Consequently, this case is unlikely to increase the congestion of the Court so

22  substantially as to outweigh California's interest in resolving this dispute.

**d.      Congestion in the Court Does Not Favor Dismissal.**

24      "With respect to congestion, the issue is not whether dismissal will reduce

25  _____

26  [10] *See* RJN Exs. 3 & 4 (indicating that less than 2% of civil cases went to trial (*e.g.,*
    there were over 278,000 civil cases filed throughout the country in each of 2011,
27  2012 and 2013, but less than 5,400 trials throughout the country in any of those
    years)).

28

congestion in California, but whether a trial will be quicker in [the alternative forum] because its docket is less crowded." *King.com Ltd.*, 2014 WL 1340574, at *9 (internal quotation marks omitted).  CJ E&M's witness asserts that the time to trial in Korea is approximately one year.  (Yang Decl. ¶ 11)  In contrast, a trial in a civil case in the Central District occurs, on average, 19.9 months after the filing of the Complaint.  (RJN Ex. 5)  But because the vast majority of civil cases in the United States settle (particularly in the Central District, with its alternative dispute resolution programs), the median time from filing to disposition of a civil case in the Central District is only 5.5 months.  *Id*.  Consequently, it is highly probable that the disposition of this case in the Central District will be efficient.  Furthermore, were the case to be dismissed and filed in Korea, any relative gain in its progression if it went to trial in Korea would be minimized by the time required for DFSB to hire and work with local Korean counsel well-versed in American copyright law.

**e.     The Costs of Resolving a Dispute Unrelated to a Particular Forum Does Not Favor Dismissal.**

As discussed above (Section II(A)(2)(a)), this action is related to this forum.

**\*\*\***

The public and private-interest factors therefore weigh against dismissal; and this Court should follow the outcome arising from similar facts in *King.com*.  In that case, a foreign plaintiff alleged copyright infringement for online games against a foreign defendant and a domestic defendant (which submitted a declaration disclaiming involvement in the infringement).  *Id*., 2014 WL 1340574, at *3.  The district court declined to dismiss the case on grounds that included the following: (1) although several witnesses were present in Asia, key witnesses were located in the United States, (2) dismissing the case in favor of China would merely have shifted the burdens between witnesses and parties, instead of reducing the overall burden, (3) there was no evidence that Chinese courts could compel American third parties to produce witnesses or documentary evidence, and (4) although the

infringing games were developed in China, they were distributed solely through Facebook in California, which "has an interest in curbing intrastate copyright infringement." *Id*. at *3-*9.

### B.     The Court Should Not Dismiss the Claim for Copyright Infringement under Rule 12(b)(6).

DFSB alleges that:

- it has the "exclusive right to reproduce, distribute, publicly perform and publicly display" within the United States the sound recordings that are identified on Exhibit 1 by name, artist, album and U.S. copyright office registration number. (Compl. ¶¶ 1, 13-15, Ex. 1)  DFSB also has the "exclusive right to pursue causes of action for infringement that have accrued in favor of the copyright owners of these works."  (*Id*. ¶ 13)

- "Neither CJ E&M nor CJ E&M America has rights to distribute these recordings within the United States.  Neither CJ E&M nor CJ E&M America has copyrights to these sounds recordings or the underlying works in the United States."  (*Id*. ¶ 26)

- Starting in 2014, defendants distributed to the American company, MediaNet (and, through MediaNet, for further distribution to the U.S. public via the Beats music service), sound recordings identified on the last two pages of Exhibit 1 by the artists Swallow and Rhymebus.  (*Id*. ¶ 25)

- CJ E&M has used its website, www.mnet.com (operated through Massachusetts), to target U.S. music consumers via English-language advertisements, terms of service, and payment mechanisms and has made "available in the United States for sales and/or sold to people within the United States" the works identified in Exhibit 1 at prices ranging from less than $0.10 per track to free.  (*Id*. ¶¶ 30-39)

CJ E&M claims that the Court should dismiss, under Rule 12(b)(6), DFSB's claim for copyright infringement because:  (1) while DFSB alleges that it has exclusive licenses in the United States for specific recordings, DFSB does not name each of the licensors (Memo. at 17:26-28), (2) DFSB does not allege that any distribution of infringing works by Swallow or Rhymebus occurred (*id*. at 19:15-17), and (3) DFSB does not adequately detail CJ E&M America's involvement in the infringement, and any details that are provided fail because they suggest a conspiracy

-17-

1   theory that is preempted by the Copyright Act (*id*. at 19:20-20:22).  None of these

2   arguments has merit.

3       *First*, DFSB's Complaint is not deficient because it fails to name each of

4   DFSB's licensors.  (Memo. at 17:26-28)  Defendant fails to cite any case that

5   dismisses a Complaint in a copyright context because the plaintiff fails to identify

6   each of its licensors.[11]  Each of the works at issue is "registered with the U.S.

7   Copyright Office" (Compl. ¶ 14), and the copyright owners can be found on the

8   website of the U.S. Copyright Office.  Moreover, as defendant acknowledges, "if

9   Plaintiff holds any rights at all, it must have received them from the original

10  copyright owners, presumably the artists or the artists' management companies."

11  (Memo. at 18:6-8)

12      *Second*, defendant is wrong to state that DFSB has not stated a claim for

13  copyright infringement because "Plaintiff has not alleged that copies of any of the

14  sound recordings were actually disseminated to the public."  (Memo. at 19:15-16).

15  DFSB alleges that, since 2014, defendants have distributed sound recordings to

16  MediaNet, an American company with an office in Los Angeles.  (Compl. ¶¶ 24-25)

17  MediaNet's business is to distribute digital music to streaming services, such as

18  Beats, which offers public performances and distributions of these songs to U.S.

19  consumers.  (*Id*. ¶¶ 23-25)  Distribution of copyrighted works to intermediaries for

20  ultimate distribution to consumers runs afoul of a copyright owner's exclusive right

21  to distribute copies of its works to the public under 17 U.S.C. § 106(3).  *See* 1 M.

22  Nimmer, Nimmer on Copyright § 4.13[A][1] at 4–80 ("[D]istribution to retailers for

---

[11] Defendant cites *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 228 (S.D.N.Y. 2000) to argue that DFSB's Complaint lacks the requisite specificity.  (Memo. at 18:15-17)  But that case is distinguishable because the plaintiff in *Marvullo* alleged that defendant had published a photograph "'beyond the scope…of the limited license,' absent any factual support."  *Id*. at 228.   In contrast, DFSB has identified the songs at issue, the time frame, via what websites the songs were distributed, and to whom.

28

ultimate distribution to the general public in itself constitutes a general, not a limited, publication." (citing *Data Cash Sys., Inc. v. JS&A Group, Inc.*, 628 F.2d 1038 (7th Cir. 1980)).

Defendant further errs by arguing that "[m]aking copyrighted works available for consumption by others does not, by itself, violate the copyright owner's right of distribution."  (Memo. at 19:9-11 (citing *In re Napster,* 377 F. Supp. 2d 796, 802 (N.D. Cal. 2005) & *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 844 (C.D. Cal. 2006)).  This argument is presumably directed at DFSB's allegation that, through Mnet.com, CJ E&M "made available for sale and/or sold to people within the United States" the infringing works.[12]  (Compl. ¶ 37)  Even assuming that DFSB had only alleged that CJ E&M made available for sale the infringing works, this allegation would still be adequate to state a claim for copyright infringement.  Defendant's contrary argument rests upon two district-court decisions, whereas the Ninth-Circuit decisions for both cases largely undermine defendant's point.  In *A&M Records, Inc v. Napster, Inc.,* 239 F.3d 1004 (9th Cir. 2001), the Ninth Circuit held that "Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights." *Id*. at 1014.  As Professor Nimmer has explained, this statement supports the interpretation that infringement arises from "mak[ing] available" copyrighted works, regardless of whether those works are actually distributed. *See* 1 M. Nimmer, Nimmer on Copyright § 8.11[C][2] at 8-215; *see also id*. at 8.11[B][4][c] at 8-202 ("the distribution right embodied in the current Act applies to offers to the

---

[12] This allegation regarding Mnet.com is another example of infringement, distinct from DFSB's allegation that defendants distributed copyrighted music to MediaNet, which then distributed the music to Beats and U.S. consumers.  *Compare* Compl. ¶¶ 22-29 (allegations regarding MediaNet) *with id*. ¶¶ 30-39 (allegations regarding Mnet.com).  Both sets of allegations support DFSB's claim for copyright infringement; and it would be improper to dismiss the infringement claim unless both allegations were legally inadequate.

public, rather than being limited to consummated acts of actual distribution").  It is true that in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007), the Ninth Circuit noted that it was "consistent with the language of the Copyright Act" to conclude that "distribution requires an 'actual dissemination' of a copy." *Id.* at 1162.  But the Circuit then explained that this interpretation did not apply to Google because it did not own the copyrighted images or distribute them to third parties (thereby turning into *dicta* the Ninth Circuit's comments on "consummated acts of actual distribution"). *Id.* at 1162-63.  And the Ninth Circuit in *Perfect 10* reiterated without criticism the holding of the *Napster* decision that: "the distribution rights of the plaintiff copyright owners were infringed by Napster users (private individuals with collections of music files stored on their home computers) when they used the Napster software to make their collections available to all other Napster users." *Id.*[13]

*Third*, defendant errs by claiming that DFSB does not adequately detail CJ E&M America's involvement in the infringement, and any details that are provided fail because they suggest a conspiracy theory that is preempted by the Copyright Act (Memo. at 19:20-20:22).[14]  DFSB alleges that "[s]ince around 2014, CJ E&M and CJ E&M America have distributed to MediaNet (and, through MediaNet, for further distribution to the U.S. public) sound recordings, including…the nineteen sound recordings by Swallow and Rhymebus listed on the last two pages of Exhibit 1."  (Compl. ¶ 25)  DFSB's claim for copyright infringement against CJ E&M America is therefore supported by detailed allegations regarding the latter's distribution of infringing works.

---

[13] Professor Nimmer described the Ninth Circuit's decision in *Perfect 10* as "confusing[]" and "shed[ing] no light on the origins or legislative history of the distribution right." 1 M. Nimmer, Nimmer on Copyright § 8.11[C][3] at 8-216.

[14] Defendant acknowledges that DFSB "does not actually assert a civil conspiracy cause of action." (Memo. at 2:7-8)

### C.   The Court Should Not Dismiss the DMCA Claim Under Rule 12(b)(6).

Defendant alleges that DFSB's claim for DMCA violations fails because: (1) DFSB "does not allege that *CJ E&M America* intentionally removed or altered any copyright notices" (Memo. at 21:15-16), and (2) "ISRCs and UPCs are not 'copyright management information'" (*id*. at 21:23). Neither argument has merit.

*First*, defendant misrepresents the Complaint when it states that there is no allegation that "*CJ E&M America* intentionally removed or altered any copyright notices." (Memo. at 21:15-16) DFSB alleges that CJ E&M America (acting from Los Angeles) falsified copyright notices, International Standard Recording Codes ("ISRCs"), and Universal Product Codes ("UPCs"). (Compl. ¶¶ 28, 50)

*Second*, defendant's argument that the Court should dismiss the claim for DMCA violations because ISRCs and UPCs are not copyright management information is under-inclusive and wrong. Defendant's argument is under-inclusive because DFSB alleges that CJ E&M America falsified copyright notices for the sound recordings and for the underlying works, in addition to ISRCs and UPCs. (Compl. ¶ 50) Defendant does not argue that copyright notices are not copyright management information under the DMCA. Consequently, regardless of whether ISRCs and UPCs fall under the DMCA (and the Court need not address that issue at this juncture), DFSB's claim for DMCA violations would be valid because of CJ E&M America's falsification of the copyright notices.

Defendant's argument is also wrong because ISRCs and UPCs are "copyright management information" under the DMCA. Under that statute, "copyright management information" includes "[t]he title and other information identifying the work, including the information set forth on a notice of copyright" as well as "[i]dentifying numbers or symbols referring to such information or links to such information." 17 U.S.C. § 1202(c)(1) & (7). ISRCs and UPCs fit this description. An ISRC "consists of 12 characters" and "is a unique identifier for a specific

recording" distributed by the International Federation of the Phonographic Industry ("IFPI").[15]  (Compl. ¶¶ 18-19)  Likewise, a UPC "is a unique identifier for an album."  (*Id.* ¶ 17)  As the IFPI explained to the U.S. Copyright Office:

> ISRC numbers are widely used to identify sound recordings for rights management purposes.  Owners/distributors are now required to supply them to some large online music services.  In addition, collective management organizations such as SoundExchange (in the US) and PPL (in the UK) expect copyright owners to provide ISRCs when submitting their repertoire. For that reason, they are currently assigned to virtually all commercially important new tracks and have been assigned to many older tracks as well.[16]

Because of their importance to copyright management, statements of account submitted to the Copyright Royalty Board for making and distributing sound recordings must "include a clear statement" of the ISRC "associated with the relevant sound recording" as well as the UPC "used on or associated with the phonorecords."  37 C.F.R. § 210.17(d)(3)(iii) & 210.17(d)(3)(B).

Defendant cites no case holding that ISRCs and UPCs are not copyright management information.[17]  Instead, defendant relies upon two district-court decisions that (according to defendant) contain language supporting its argument. (Memo at 22:3-17 (citing *Textile Secrets Int'l, Inc., v. Ya-ya Brand, Inc.*, 524 F.

---

[15] Defendant notes that the ISRC does not necessarily identify the rights holder for the work.  (Memo. at 21:27-22:1)  But identifying information about the copyright owner of a work is only one of eight kinds of copyright management information identified under the DMCA.  *See* 17 U.S.C. § 1202(c).

[16] Response to Notice of Inquiry by IFPI at p. 3, *In the Matter of:  Technological Upgrades to Registration and Recordation Functions* (Docket No. 2013-2) (available at http://copyright.gov/docs/technical_upgrades/comments/ISRC-Agencies.pdf).

[17] To the extent that the Court determines that the issue of whether ISRCs and UPCs are copyright management information under the DMCA is novel, then this weighs against dismissing the Complaint.  *See Electrical Construction & Maintenance Co. v. Maeda Pacific Corp.,* 764 F.2d 619, 623 (9th Cir.1985) ("The court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel . . . , since it is important that new legal theories be explored and assayed in the light of actual facts. . . .").

Supp. 2d 1184, 1201 (C.D. Cal. 2007) & *IQ Group Ltd. v. Wiesner Publ'g Inc.,* 409

F. Supp. 2d 587, 597 (D.N.J. 2006)).  Neither case justifies dismissal of DFSB's

claim under the DMCA.  In *Textile Secrets,* the plaintiff alleged that it was a

violation of the DMCA for defendant to remove from fabric a tag that listed

plaintiff's name and a copyright signal.  *Id*., 524 F. Supp. at 1192-93.  The district

court rejected the argument that the DMCA extended to "copyright information on

fabric" since that would create a "limitless scope" for the DMCA that would make it

"applicable to all works bearing copyright information."  *Id*. at 1195.  The district

court therefore reasonably concluded that the DMCA was not "intended to apply to

circumstances that have no relation to the Internet, electronic commerce, automated

copyright protections or management systems, public registers, or other

technological measures or processes as contemplated in the DMCA as a whole."  *Id*.

at 1201.  In *Textile Secrets,* the district court favorably cited *IQ Group* (*id*. at 1200),

where a district court in New Jersey had concluded that logos and hypertext links

were not "copyright management information" under the DMCA  (*id*., 409 F. Supp.

2d at 597).  The district court reasoned that "[t]o come within § 1202, the

information removed must function as a component of an automated copyright

protection or management system." *Id*.  Recent cases from district courts in in this

Circuit and elsewhere have rejected the narrow reading of the DMCA adopted by *IQ

Group*.  *See, e.g., Agence France Presse v. Morel,* 769 F. Supp. 2d 295, 305

(S.D.N.Y. 2011) ("[T]his Court declines to adopt a narrow construction of the term

'CMI'—adopted by the District of New Jersey and offered by the movants—as

limited to 'a component of an automated copyright protection or management

system.'" (citing *IQ Group*) (denying motion to dismiss DMCA claims where

defendant placed false attributions on online photographs)); *Brown v. Stroud,* No. C

08-02348 JSW, 2011 WL 2600661, at *5 (N.D. Cal. June 30, 2011) (same); *Fox v.

Hildebrand*, No. CV 09-2085 DSF (VBKx), 2009 WL 1977996, at *3 (C.D. Cal. July

1, 2009) ("The plain language of the statute indicates that the DMCA provision at

-23-

issue is not limited to copyright notices that are digitally placed on a work." (denying motion to dismiss where plaintiff alleged that bank falsely attributed copyright ownership to architectural plans on website)).

The unreasonableness of defendant's position is evident from the fact that, under defendant's reasoning, one could falsely designate the copyright owner of a work online without violating the DMCA, provided that one did not circumvent an automated copyright management or protection system.

### D.   Contrary to Defendant's Argument, DFSB Has Standing to Sue.

Defendant argues that DFSB lacks standing because:  (1) it "has failed to allege facts establishing that it is the owner of any rights in the asserted sound recordings" (Memo at 23:8-10), and (2) a copyright owner "can sue for the infringement of a right that occurred only *while it was the owner of that right*" (*id*. at 23:6-7).  Both arguments fail.

*First,* the Ninth Circuit has explained that, "[t]o be entitled to sue for copyright infringement, the plaintiff must be the legal or beneficial owner of an exclusive right under a copyright."  *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (internal quotation marks omitted).  Those exclusive rights, which are identified in Section 106 of the 1976 Copyright Act, include the rights to reproduce, distribute, and publicly perform copyrighted works.  *Id*.  DFSB has "exclusive licenses to reproduce, distribute, publicly perform and publicly display in the United States" the copyrighted works.  (Compl. ¶ 1)  Consequently, it has standing to sue over its exclusive rights.

*Second*, an assignee of a copyright can assert accrued causes of action if the copyright owner assigned both ownership of the copyright and the accrued copyright infringement claims.  It is true that under 17 U.S.C. § 501(b), "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that

1  particular right committed while he or she is the owner of it."  But the Ninth Circuit

2  has explained that this does not foreclose the assignment of causes of action

3  concomitant with the exclusive rights.  In *Silvers*, the Ninth Circuit wrote:

4          [T]he Second Circuit decided *ABKCO Music, Inc. v. Harrisongs Music,*
        *Ltd.*, 944 F.2d 971, 980 (2d Cir.1991), a copyright case in which ABKCO
5          had bought both the copyright to a song and "any and all rights assertable
        under copyright against the Infringing Composition in any part of the
6          world which may have heretofore arisen or which may hereafter arise."
        (Internal quotation marks omitted.) Although the infringement in question
7          had occurred before ABKCO bought the copyright, the court held that
        ABKCO could sue the infringer "not out of its ownership of the copyright,
8          but from its ownership of the claims themselves which it purchased, along
        with the copyright, in 1978." *Id.* at 981.  The Second Circuit made clear
9          that its decision was limited to the situation in which the same entity
10         purchased both the copyright and accrued claims…

11  402 F.3d 881 at 889-90.  The Ninth Circuit then endorsed *ABKCO*, stating:

12         This holding makes perfect sense, as it is consistent with the Act and with
        the constitutional purpose of encouraging authors and inventors by
13         creating a limited monopoly on their works and inventions.  When one
        acquires a copyright that has been infringed, one is acquiring a copyright
14         whose value has been impaired. Consequently, to receive maximum value
        for the impaired copyright, one must also convey the right to recover the
15         value of the impairment by instituting a copyright action.

16  *Id.* at 890 n.1.  Consequently, DFSB can acquire both exclusive copyrights and their

17  accrued claims, as alleged in the thirteenth paragraph of the Complaint.

18  **III.   CONCLUSION**

19

20         The Court should deny defendant's motion to dismiss.  If the Court grants any

21  portion of defendant's 12(b)(6) motion, then DFSB requests that any dismissal be

22  without prejudice.

23  DATED:  May 11, 2015              BROWNE GEORGE ROSS LLP
                                  Eric M. George
24                                  Jonathan Gottfried

25                                  By   _____/s/ Jonathan Gottfried_____
                                       Jonathan Gottfried
26  Attorneys for Plaintiff
   DFSB Kollective Co., Ltd.

27

28