Ekwan E. Rhow - State Bar No. 174604
 eer@birdmarella.com
Timothy B. Yoo - State Bar No. 254332
 tby@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant
CJ E&M America, Inc.

FILED
CLERK, U.S. DISTRICT COURT
May 20, 2015
CENTRAL DISTRICT OF CALIFORNIA
BY: ___PMC___ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DFSB KOLLECTIVE CO. LTD., <br><br>  Plaintiff, <br><br>vs. <br><br>CJ E&M, INC., a Korean corporation; CJ E&M AMERICA, INC., a California corporation, <br><br>  Defendants. | CASE NO: 2:15-cv-01650-SVW-FFM <br><br>**DEFENDANT CJ E&M AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR *FORUM NON CONVENIENS*, LACK OF STANDING, AND FAILURE TO STATE A CLAIM FOR RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br>**FED. R. CIV. P. 12(b)(1) and 12(b)(6)** <br><br>Date: June 1, 2015 <br>Time: 1:30 P.M. <br>Crtrm.: 6 <br><br>Assigned to Hon. Stephen V. Wilson |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.   INTRODUCTION ................................................................................... 1

II.  ARGUMENT ........................................................................................... 4

    A.  This Court Can And Should Dismiss This Action Based On *Forum Non Conveniens*. ............................................................... 4

        1.  Plaintiff concedes that Korea is an available and adequate forum. ............................................................... 4

        2.  It is far more convenient for the parties to litigate this dispute in Korea. ............................................................... 4

            a.  The Residence Of The Parties And Witnesses Favors Dismissal. ............................................................... 4

            b.  The Relevant Documents Are Located In Korea And Written in Korean. ............................................................... 6

            c.  Evidence From Third Parties Is More Easily Obtained In Korea. ............................................................... 6

        3.  The Court should dismiss this action in the interest of judicial economy and the public's convenience. ........................ 8

            a.  A Court Would Have To Apply Predominantly Korean Law. ............................................................... 8

            b.  There Is No Local Interest In Resolving This Case Before This Court ............................................................... 9

            c.  It Would Be A Waste Of Judicial Resources To Try This Case Here. ............................................................... 10

    B.  Plaintiff Has Failed To State A Claim For Relief. ................................. 10

        1.  Plaintiff has failed to state a claim for copyright infringement. ............................................................... 10

        2.  Plaintiff has failed to state a claim for violations of the DMCA. ............................................................... 11

    C.  Plaintiff Lacks Standing To Sue. ......................................................... 12

III. CONCLUSION ................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ..................................................................................5

*Howe v. Goldcorp Invest. Ltd.*,
   946 F.2d 944 (1st Cir. 1991) ....................................................................................8

*Lahiri v. Universal Music & Video Dist.*,
   513 F. Supp. 2d 1172 (C.D. Cal. 2007) ................................................................3, 8

*Perfect 10 v. Google, Inc.*,
   416 F. Supp. 2d 828 (C.D. Cal. 2006) ...................................................................11

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) .................................................................................................4

*In re: Proceedings Before the Korean District Court in the Republic of Korea*,
   No. 02-2097 (W.D. Wash. Nov. 1, 2002), ECF No. 13 ..........................................7

*Silvers v. Sony Pictures Entm't, Inc.*,
   402 F.3d 881 (9th Cir. 2005) .................................................................................12

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
   24 F.3d 1088 (9th Cir. 1994) ...................................................................................9

*Textile Secrets Int'l, Inc. v. Ya-ya Brand, Inc.*,
   524 F. Supp. 2d 1184 (C.D. Cal. 2007) .................................................................12

**Federal Statutes**

17 U.S.C. § 501(b) ......................................................................................................12

Digital Millennium Copyright Act .............................................................................11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff has failed to refute CJ E&M America, Inc.'s clear showing that litigating this matter in a Korean court would be more convenient than in this forum. This is a Korean property dispute between two Korean companies over who owns what rights. That those property rights involve overseas distribution rights is incidental to the key issue—ownership—and does not countervail the enormous inconvenience that the parties and the Court would bear in resolving that issue here. Despite DFSB's attempts at misdirection, the fact remains that its present lawsuit is largely indistinguishable from a prior Korean litigation in which it asserted nearly identical claims. The Settlement Order in the Korean litigation, references a "List of Claims" contained in the Purport and Reason for the Claim. (Cho Decl., Exh. 1 at 2.) In the Reason for the Claim, Paragraph 3 is entitled "Illegal overseas distribution of digital music content by defendant" and contains DFSB's prior allegations:

> Defendant allows overseas users using overseas IP to illegally stream and download 3947 songs distributed overseas by the plaintiff . . . *from the sites www.mnet.com* and music.naver.com operated by the defendant.
>
> . . .
>
> Furthermore, despite the fact that ISRC code must be issued in order to distribute digital music content overseas, defendant illegally distributed the content without even receiving the ISRC code from the plaintiff, who manages and issues domestic ISRC code.
>
> . . .
>
> ***This is illegal breach of plaintiff's overseas distribution rights*** . . . ."

(Cho Decl., Exh. 1 at 10-11 (emphases added).) These are the *same assertions* made in Plaintiff's present complaint for which it now brings a cause of action for copyright infringement. These claims were litigated in the Korean court and should be litigated there once again.

Desperate to amplify its lawsuit's attenuated ties to this forum and manufacture others, DFSB also overstates: (i) CJ E&M America's supposed close involvement with the alleged bad acts; and (ii) the role of American third-parties

Beats Music and MediaNet in the dispute.  This Court should not be misled.  *First*, CJ E&M America is not involved in any of the acts alleged in Plaintiff's complaint.  In support of its motion, CJ E&M America submitted a witness declaration asserting the following:

- "Nobody at CJ E&M America is involved in licensing sound recordings or the underlying music content for Korean pop music."
- "[N]obody at CJ E&M America is responsible for licensing music to or providing music content to Beats Music or any other streaming music service."
- "Nobody at CJ E&M America is involved in the back-end or front-end administration of the so-called 'Mnet' website . . . ."
- "Nobody at CJ E&M America controls the content that is displayed on or available through the 'Mnet' website."

(Killoren Decl. ¶¶ 5,7.)[1]  Nothing in Plaintiff's opposition and supporting declarations refutes any of those factual assertions.  Foremost, its assertion that "publicly available information indicates that CJ E&M America was closely involved with the distribution of sound recordings to the U.S. public," (Opp. at 1), is a falsehood.  For instance, DFSB tries to tie the website MnetAmerica.com to the alleged wrongdoing by asserting that "[o]nline fan sites and community sites" supposedly instruct users how to circumvent the security protocols in place so that users can "obtain Korean pop music through the website of www.mnetamerica.com." (Cho Decl. ¶ 7.)  As support, DFSB submits a screenshot of a post dated *October 27, 2010* from one of these third-party "fan sites." (Cho Decl., Exh. 7.)  Foremorst, www.mnetamerica.com is entirely distinct and separate from the "Mnet" website identified in the complaint – as it is not used to download music and has no connection to the "Mnet" website.  Such superficially-relevant

---

[1]  This evidence was not submitted, as Plaintiff contends, to rebut liability.  Rather, it was presented for purposes of the *forum non conveniens* analysis, which is not based on the merits of the case, to demonstrate that the locus of the dispute is in Korea.

assertions underscore the overall speciousness of DFSB's claims and highlight fatal defects in its theory of liability.

*Second*, evidence from the American third-parties, Beats Music and MediaNet, has only scant relevance to this action. While Plaintiff rests its claims on the alleged distribution of sound recordings on Beats Music and the "Mnet" website, it identifies only 19 out of the 303 sound recordings as having been provided to Beats Music. (Compl. ¶ 25.) The bulk of the allegedly infringing activity concerns the "Mnet" website, not Beats Music. (Compl. ¶¶ 30-38.) But CJ E&M is not likely to dispute that it provides music to Beats Music. It signed a content distribution agreement to do just that. (Lee Decl. ¶ 8.) Hence, the critical issue is not whether and in what manner sound recordings were provided to Beats Music (e.g., via MediaNet), but rather *who owns* the overseas distribution rights to those recordings, which must be decided under Korean law. *See Lahiri v. Universal Music & Video Dist.*, 513 F. Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007). For the other sound recordings, Plaintiff alleges that those were made available for overseas consumers through the "Mnet" website. (Compl. ¶¶ 30-38.) All of the music content on that website is curated entirely by a team in Korea. (Mem. at 10-11; Lee Decl. ¶ 11.) Thus, all of the witnesses relating to the music distributed on the "Mnet" website are in Korea. (Lee Decl. ¶ 11.)

Moreover, a gateway issue to liability is that music content is not available when the "Mnet" website is accessed from overseas. (Mem. at 10-11; Killoren Decl. 8.) Since Plaintiff can then at best only proceed on a secondary theory of liability, the key issues will then be (i) whether CJ E&M Corporation had the right and ability to supervise the third-party circumvention and (ii) whether it specifically knew of the circumvention and either induced, caused, or materially contributed to it. That will require evidence from the administrators of the "Mnet" website, namely the online division in Korea. (Lee Decl. ¶ 11.) For those reasons, and for the reasons in Defendant's opening brief, this Court should dismiss this action.

## II. ARGUMENT

### A. This Court Can And Should Dismiss This Action Based On *Forum Non Conveniens*.

#### 1. Plaintiff concedes that Korea is an available and adequate forum.

Plaintiff concedes that a Korean court provides adequate remedies and permits suits involving the subject matter of the dispute. (Opp. at 3.) Defendants are all amenable to suit in Korea. (Mem. at 7-8.) Thus, Korea is an adequate alternative forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256-57 (1981). Plaintiff also concedes that, as a foreign party, its choice of a U.S. forum is entitled to less deference. (Opp. at 2.)

#### 2. It is far more convenient for the parties to litigate this dispute in Korea.

##### a. The Residence Of The Parties And Witnesses Favors Dismissal.

The essential parties and the relevant party witnesses all reside in Korea. Defendant CJ E&M Corporation ("CJ E&M") and all of its witnesses reside in Korea. While CJ E&M America resides in the U.S., it is not involved in music licensing or the administration of the "Mnet" website. (Killoren Decl. ¶¶ 4, 5, 7.) Plaintiff DFSB resides in Korea. (Comp. ¶ 6.) This a dispute between two Korean companies regarding the overseas rights to Korean property, which favors a Korean forum. All of the salient fact witnesses belong to the Korean Defendant, CJ E&M, (Lee Decl. ¶¶ 3, 8, 11), and the locus of the dispute is plainly in Korea.

Plaintiff has alleged wrongdoing based on: (i) for sound recordings provided to Beats Music, (Compl. ¶¶ 2, 24-27), and (ii) sound recordings distributed on the "Mnet" website (Compl. ¶¶ 30-38). The former is handled entirely by Dong-hun Lee's team in Korea. (Lee Decl. ¶¶ 3, 8-10.) For the latter, Dong-hun Lee's team curates all of the music available on the "Mnet" website while another team, the online team, administers all technical aspects of the website, including putting in place protocols to ensure compliance with any territorial restrictions on the

1  distribution of music. (Lee Decl. ¶ 11.) Thus, to the extent that evidence must be
2  obtained regarding the "Mnet" website, it must be obtained from Korea. In other
3  words, (i) all of the witnesses concerning the provision of sound recordings to Beats
4  Music; and (ii) all of the witnesses concerning the music content available on the
5  "Mnet" website, including witnesses that would be knowledgeable about the
6  evidence that Plaintiff claims is important to resolving the current dispute, (Opp. at
7  8), are in Korea.

8  　　　　Again, Plaintiff overstates CJ E&M America's involvement by offering
9  multiple red herrings. Plaintiff is correct that CJ E&M America, along with
10 Defendant CJ E&M, helps organize KCON, an annual convention of all things
11 relating to Korean popular culture, including a live taping of "M Countdown," a
12 weekly cable broadcast show that is indeed the "World No.1 K.Pop Chart Show."
13 (Opp. at 4.) It is not clear, however, what nexus any of that has to the wrongdoing
14 alleged, i.e., the alleged provision of music to Beats Music and overseas distribution
15 through the "Mnet" website. Further, Plaintiff's tortured attempt to connect CJ
16 E&M America to the wrongdoing through www.mnetamerica.com fares no better.
17 Plaintiff rests its entire argument on a single screenshot of a post dated October 27,
18 2010 from a third-party "fan site" that supposedly instructs users how to purchase
19 music through www.mnetamerica.com. (Cho Decl., Exh. 7.) Even if it was possible
20 to circumvent the "Mnet" website's geo-blocking protocol through
21 www.mnetamerica.com in October 2010, secondary liability can hardly attach for
22 such acts of apparent third-party infringers unrelated to CJ E&M America, i.e., the
23 online fan sites and community sites that supposedly instructed users how to trick
24 the "Mnet" website. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019-
25 22 (9th Cir. 2001). Recognizing this, Plaintiff did not include a single allegation
26 regarding www.mnetamerica.com in its complaint. Its belated feeble attempt in its
27 opposition is unavailing and fails to refute any of CJ E&M America's assertions
28 about its non-involvement.

### b. The Relevant Documents Are Located In Korea And Written in Korean.

Plaintiff contends that the "evidence in this case will primarily consist of documents." (Opp. at 8.) Plaintiff errs, however, in describing the nature and scope of the extant documents. Again, the key issue in resolving this dispute will be determining the ownership of the underlying copyrights. This could involve tracking down and verifying the chains of title for each one of the 303 sound recordings asserted in Plaintiff's complaint. Licenses from third-party content providers sometimes but not always include chain-of-title documents stemming all the way back to the underlying agreements with the original copyright holders. (*See, e.g.*, Lee Decl. ¶ 10.) Because the recordings here are old, there could and likely have been multiple licenses with varying grants of rights. *Id.* It will be important to marshal the ownership documents for each of the 303 sound recordings, which documents all remain in Korea, and not necessarily in the possession or control of the parties. (Mem. at 11.) Documents relating to the administration of the "Mnet" website, including all internal communications written in Korean possibly evidencing or disproving a level of control and encouragement to the potentially infringing activity of third parties, are in Korea. User records, including purchase records, which would be required to assess possible damages, are in Korea. Plaintiff, naturally, undersells the volume of translation that will be required by failing to account for internal communications that go towards establishing or disproving willfulness, negotiations with third-parties regarding the licenses at issue, and indeed, the sheer volume of documents relating to the licensing of all 303 sound recordings at issue.

### c. Evidence From Third Parties Is More Easily Obtained In Korea.

Evidence from relevant third parties is more easily obtained in Korea, a factor which favors dismissal. The American third-parties, Beats Music and MediaNet,

will play an infinitesimal role if any in this dispute. Quantitatively, Plaintiff has identified 19 sound recordings that it alleges were provided to Beats Music, or 6% of the total sound recordings it has asserted in this lawsuit. Thus, even assuming for the sake of argument that third-party testimony is important as to those 19 sound recordings, those recordings represent a small fraction of the recordings asserted, and thus, the relative importance of third-party testimony relating to them matters very little to the case. Qualitatively, the evidence that Plaintiff expects to obtain from the American third-parties appears trivial and redundant. Plaintiff states that it expects MediaNet and Beats to testify about (i) how and from whom they received "infringing sound recordings"; (ii) revenues paid to defendants for the infringing works; (iii) how those recordings were further distributed to American consumers. Again, the more important issue concerning the recordings provided to Beats Music is ownership, not the provision of recordings, which CJ E&M Corporation does not deny. In any event, evidence about what recordings were provided to Beats Music, and what revenue that third-parties have paid to Defendant CJ E&M if any, are undoubtedly equally available from CJ E&M.[2] Moreover, Plaintiff is wrong to suggest that a request for discovery from U.S. third-party witnesses would be unavailable through Section 1782 because of the more limited discovery in Korean courts.[3] Here, the third-parties that are relevant, i.e., the companies that can provide evidence of ownership, either by CJ E&M or by DFSB, all reside in Korea.

---

[2] Furthermore, "(iii) how those recordings were further distributed to American consumers" would be subsumed under the second category—revenues paid to defendants—since defendants are presumably paid after consumers purchase the music, which records would be expected to be ordinarily maintained.

[3] *See, e.g.*, Order Granting Motion for Leave to Take Discovery, *In re: Proceedings Before the Korean District Court in the Republic of Korea*, No. 02-2097 (W.D. Wash. Nov. 1, 2002), ECF No. 13 (district court granting application for leave to take deposition of employee of defendant's U.S. subsidiary in a matter pending for the Busan District Court in Korea).

Contrary to Plaintiff's assertion (Opp. at 1), a Korean court would have subpoena power to compel those third parties to appear at a trial (Yang Decl. ¶ 12), a proposition that is decidedly less certain before this Court. Plaintiff again relies on specious evidence to suggest that this Court would be able to implead Neowiz Internet, one of the third-party content providers with whom Defendant CJ E&M contracts and who owes it an indemnity obligation. (*See* Cho Decl., Exh. 11.) Plaintiff's evidence and argument are dubious at best. By contrast, Defendants would have no issues enforcing Neowiz's indemnity obligations in Korea. (Yang Decl. ¶ 12.) This is a favor that favors dismissal. *See Howe v. Goldcorp Invest. Ltd.*, 946 F.2d 944, 951 (1st Cir. 1991). Thus, the private interest factors support dismissal in favor of a Korean forum, a showing that Plaintiff has failed to rebut.

**3. The Court should dismiss this action in the interest of judicial economy and the public's convenience.**

**a. A Court Would Have To Apply Predominantly Korean Law.**

Plaintiff is incorrect that a court would have to apply mostly U.S. law. (Opp. at 14.) The primary issue concerns *ownership* of the rights to the asserted sounds recordings. The question of copyright ownership of a work is governed by the laws of that work's country of origin. *Lahiri v. Universal Music & Video Dist.*, 513 F. Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007). Here, the sound recordings at issue originate from Korea, and thus, Korean copyright law must be applied to the question of ownership, including specifically whether any purported assignment of rights was effective and the nature of the interest assigned, if any, such as overseas rights and specific territorial rights. Further, while the applicable law will be the law of the country in which the infringement occurred (Yang Decl. ¶¶ 9-10), there is no support for Plaintiff's assertion that U.S. law will automatically apply to the dispute solely because the alleged distribution occurred in the U.S. (Opp. at 14.) Rather, a court will have to determine, based on its choice-of-law principles, which acts, exactly, constitute infringement (e.g., authorizing the provision of recordings,

or the actual dissemination of copies), and thereby, the actual locus of the infringement. For instance, in order for U.S. copyright law to apply, "at least one alleged infringement must be completed entirely within the United States[.]" *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994). A court would also have to interpret the scope and preclusive effect of the release language contained in the settlement agreement from the 2011 Korean litigation, which is governed by Korean law. Plaintiff's attempt to distinguish the claims brought in the 2011 Korean litigation that led to the settlement is puzzling and belied by the evidence. Plaintiff brought a claim for "Illegal overseas distribution of digital music content by defendant" in the 2011 Korean litigation. (Cho Decl., Exh. 1 at 10-11.) The claims that Plaintiff asserts here are nearly identical to those it asserted in the earlier Korean litigation. *Id.* As part of that case's disposition, the court ordered that "Plaintiff shall withdraw remaining claims and both plaintiff and defendant shall not submit any other civil claims such as compensation for damages etc. in relation to the agreement of this case." (Cho Decl., Exh. 1 at 2.) The Court will have to interpret and determine the scope and preclusive effect of that release language under Korean law.

### b. There Is No Local Interest In Resolving This Case Before This Court

This is a dispute between two Korean companies who both claim to own specific rights relating to Korean property. The primary right involved is the distribution right to Korean-copyrighted sound recordings. The entire case involves the alleged infringement of that primary right. (Mem. at 15.) Where that infringement occurred is secondary to the primary right that was infringed. Accordingly, there is no local interest in having this case resolved before this Court.

Plaintiff has not shown why this district has a local interest in this litigation. While "Korean pop music . . . is successful in Los Angeles" as Plaintiff notes, (Opp. at 14), the local Korean interest in resolving this dispute is much stronger than this

forum's. The allegations involve the country's largest entertainment and media conglomerate, and the Plaintiff is a Korean company with its principal place of business in Seoul. To the extent that Korean pop music is getting more popular worldwide, as Plaintiff claims, then *a fortiori*, the Korean interest in the dispute is more significant.

### c. It Would Be A Waste Of Judicial Resources To Try This Case Here.

Plaintiff's evidence corroborates, not refutes, the evidence offered by CJ E&M America, that the time to trial in this district is approximately 20 months. (Opp. at 15-16.) On the other hand, the time to trial in a Korean court is expected to be significantly less. (Yang Decl. ¶ 11.) Plaintiff's attempt to undercut that reality by asserting that most cases settle is speculative at best. (Opp. at 16.) The congestion in this Court favors dismissal, especially because this case is so unrelated to this forum in the first place. Since this case is so unrelated to this district, it would be unfair, as well as a waste of time and money, to require citizens in this district to sit on a jury to resolve it. Therefore, the public interest factors tip heavily in favor of a Korean forum, a clear showing that Plaintiff has not and cannot rebut. This Court should therefore grant CJ E&M America's motion to dismiss based on *forum non conveniens*.

### B. Plaintiff Has Failed To State A Claim For Relief.

#### 1. Plaintiff has failed to state a claim for copyright infringement.

While a plaintiff asserting copyright infringement is required to plead facts establishing ownership, Plaintiff has repeated only bare legal conclusions that it has "exclusive rights" or "exclusive licenses" to the asserted sound recordings. (Mem. at 17.) Further, Plaintiff's argument that the copyright owners of the asserted sound recordings can be found on the U.S. Copyright Office website rings hollow, since a complaint must state a claim to relief that is "plausible on its face." *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  Since it has failed to plead facts sufficient to establish ownership, Plaintiff's copyright infringement claim must be dismissed.  Moreover, Plaintiff is incorrect that any of Defendant's arguments are directed at Plaintiff's allegations regarding the "Mnet" website.  (Mem. at 19.)  That is because Plaintiff's complaint makes no allegations directed specifically against CJ E&M America regarding the "Mnet" website.  (Compl. ¶¶ 30-38.)  This Court should not be persuaded by the secondary authority that Plaintiff cites to support the proposition that "making available" copyrighted works violates the copyright owner's distribution rights.  (Opp. at 19.)  The district court's holding in *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 844 (C.D. Cal. 2006) that a distribution requires, at a minimum, an actual "dissemination" of copies to the public is good law that should be persuasive to this Court.

### 2. Plaintiff has failed to state a claim for violations of the DMCA.

CJ E&M America disagrees with Plaintiff's generous reading of its own complaint to support that it specifically alleged that *CJ E&M America* had intentionally removed or altered any copyright notices.[4]  (Opp. at 21.)  Paragraph 28 of the complaint, cited by Plaintiff in support, certainly contains no such allegation.  (Compl. ¶ 28.)  Likewise, Paragraph 50 merely contains a broad general allegation that *Defendants* "intentionally committed at least four acts per infringing work" that purportedly amount to "providing/distributing incorrect copyright notices for the underlying works ***and/or*** removing/altering the correct copyright notices for the underlying works."  (Compl. ¶ 50.)  What CJ E&M America precisely did is not clear.  Indeed, the complaint does not say.  Thus, Plaintiff's allegations fail the heightened requirements under the Supreme Court's opinion in *Twombly*.  *Bell*

---

[4]   Hence, Defendant makes no concession that copyright notices comprise "copyright management information" under the Digital Millennium Copyright Act ("DMCA").

*Atlantic Corp.*, 550 U.S. 544, 555 (2007).  As for ISRCs and UPCs, Plaintiff has failed to establish that they comprise "copyright management information" under the statute.  Plaintiff invites this Court to adopt a reading of Section 1202 that would subsume all manner of identifying information even loosely be connected to sound recordings.  (Opp. at 21-22.)  For similar reasons, the court in *Textile Secrets Int'l, Inc. v. Ya-ya Brand, Inc.*, 524 F. Supp. 2d 1184 (C.D. Cal. 2007) adopted an appropriately "narrowing interpretation" that this Court should follow.  *Id.* at 1201.  The cases cited by Plaintiff in opposition do not change that *Textile Secrets* is good law and persuasive authority that is entitled to substantial deference.

### C. Plaintiff Lacks Standing To Sue.

In its opposition, Plaintiff merely repeats the insufficient legal conclusion from its complaint that DFSB has "exclusive licenses to reproduce, distribute, publicly perform and publicly display in the United States" the copyrighted works.  (Opp. at 24.)  Again, DFSB has failed to identify from whom and in what manner (not to mention when) those licenses were received, and for that reason, it has failed to plead sufficient facts establishing ownership of an exclusive right sufficient to confer it standing.  (Mem. at 17-18.)  Further, Plaintiff relies on dicta from *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005), for the proposition that Plaintiff could have acquired both (i) causes of action that had already accrued on behalf of others and (ii) exclusive substantive rights by transfer.  But the Ninth Circuit has never so held, and Defendant is not aware of any controlling authority to support Plaintiff's position.  The holding in *Silvers* was that a bare assignment of an accrued cause of action is impermissible under 17 U.S.C. § 501(b).  *Id.* at 890.  Hence, Plaintiff should not be permitted to bring infringement claims for any works for which it did not hold an exclusive substantive right at the time of the alleged infringement.

### III. CONCLUSION

For the foregoing reasons, this Court should dismiss this action in its entirety.

DATED:  May 20, 2015

Respectfully submitted,

Ekwan E. Rhow
Timothy B. Yoo
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____*/s/ Timothy B. Yoo*_____
      Timothy B. Yoo
Attorneys for Defendant
CJ E&M America, Inc.