Ekwan E. Rhow - State Bar No. 174604
  eer@birdmarella.com
Timothy B. Yoo - State Bar No. 254332
  tby@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants
CJ E&M Corporation and CJ E&M
America, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DFSB KOLLECTIVE CO. LTD., <br><br>         Plaintiff, <br><br>      vs. <br><br> CJ E&M, INC., a Korean corporation; <br> CJ E&M AMERICA, INC., a California corporation, <br><br>         Defendants. | CASE NO: 2:15-cv-01650-SVW-FFM <br><br> **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT BASED ON *FORUM NON CONVENIENS*** <br><br> Date:   January 25, 2016 <br> Time:  1:30 P.M. <br> Crtrm.: 6 <br><br> Assigned to Hon. Stephen V. Wilson |

3233321.5

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION .................................................................................. 1

II.  ARGUMENT .......................................................................................... 4

    A.   The Private Interest Factors Favor Dismissal. ........................................ 4

        1.   The Key Party Witnesses Are In Korea. ....................................... 4

        2.   The Key Non-Party Witnesses Are In Korea. .............................. 6

    B.   The Public Interest Factors Favor Dismissal. ........................................ 8

        1.   Issues Of Korean Law Abide. ....................................................... 8

        2.   This Forum's Interest In This Dispute Is Minimal. ...................... 9

    C.   Plaintiff's Choice Of Forum Should Be Given Minimal Deference. ...................................................................................... 10

    D.   Defendants Did Not Delay In Bringing This Motion. .......................... 11

III. CONCLUSION ................................................................................... 12

3233321.5

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cheng v. Boeing Co.*,
　708 F.2d 1406 (9th Cir. 1983) ............................................................. 10

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
　329 F.3d 64 (2d Cir. 2003) ................................................................. 10

**Statutes**

28 U.S.C. § 1783 ...................................................................................... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants' motion is both timely and meritorious.  In response to CJ E&M America's initial motion to dismiss based on *forum non conveniens*, which was heard in June 2015, this Court ruled that Defendants could renew this motion after the factual record had been further developed—which is exactly what they have done.  (Dkt. No. 24 ["June 4, 2015 order"] at 5.)  And Defendants have done so in the most efficient manner possible by first allowing U.S.-facing discovery to proceed and confirming what it has maintained since the outset: namely, that this case has no business being litigated before a U.S. court.  As this discovery has confirmed, this remains a Korean property dispute between two Korean companies concerning acts or omissions that must have occurred, if at all, entirely in Korea.  Despite Plaintiff's tortured attempt to exaggerate, and in many instances manufacture, this action's forum ties, nothing adduced so far points away from the propriety of resolving this matter before a Korean court.  For this reason, the Korea-facing discovery—which is set to proceed immediately after the hearing on this motion—should be foregone and this case dismissed so that further litigation can occur in a Korean action.

The Korea-facing discovery remaining includes depositions of salient fact witnesses, including primary Defendant CJ E&M Corporation's 30(b)(6) witnesses, all of whom are located in Korea.  Further, non-party witnesses outside of the parties' control, who can provide essential testimony regarding this dispute's central issue—ownership—are all located in Korea where the relevant rights-granting transactions occurred and outside this Court's subpoena power.  Meanwhile, this forum's interest in this matter, as highlighted by the amount in controversy evidenced in the Beats royalty report (Dkt. No. 42-1 ("Yoo Decl."), Exh. A), remains trivial.

Recognizing this forum's attenuated connection to this lawsuit and its close-

1

to-zero damages in the U.S., Plaintiff's opposition raises a smokescreen by shifting the focus to its mnet.com claims, and arguing that since the "damages" for those claims is ostensibly less certain, it *could* be entitled to pie-in-the-sky statutory damages up to $10 million.  Setting aside for now the many unfounded, assumptive leaps to get there, the *actual discovery* uncovered thus far reveals that DFSB is still not aware of a single relevant U.S. transaction through the website:

> Q.     And, Mr. Cho, as you sit here today do you have personal knowledge of anyone located in the United States having been able to purchase music while in the United States from the Mnet.com web site since March 6th of 2012?
>
> A.     That is something we are hoping that evidence discovery will reveal.

(Yoo Decl. Exh. B ["Bernie Cho Rough Tr."] at 225:3-8.)

Why are damages minimal?  As the evidence has established, CJ E&M's Korean personnel implemented a geo-block on its website to prevent such transactions.  And CJ E&M's investigation of its own payment database has only confirmed that no U.S. transactions for the songs at issue exist during the statutory period.  (Dkt. No. 43-5 ["Pyo Decl."] at ¶¶ 6-7.)  Notwithstanding Plaintiff's so-called expert's speculative claim[1] that certain IP addresses "outside of Korea" may not have been blocked, which does not change the fact that zero transactions have been proven and which far from establishes the supposed inefficacy of the geo-block or that U.S. transactions in fact occurred, Defendants expect upcoming fact

---

[1]   Notably, Plaintiff's so-called "expert" does not identify what materials he reviewed, or reveal any of his methodology.  Instead, he merely states in conclusory fashion that not all transactions outside of Korea were blocked.  But Defendants have not been afforded an opportunity to cross-examine Mr. Horowitz in order to test the reliability of his opinions, and hereby reserve its evidentiary objections to his declaration.

discovery in Korea to further corroborate their investigation.[2]

In the unlikely event that upcoming discovery reveals U.S. distribution through mnet.com, a court will still have to determine whether DFSB, and not CJ E&M, held the distribution rights to those sound recordings *at the time* of any transaction(s), i.e., whether DFSB has standing to sue.  Notably, for the songs it has asserted, the *earliest* date on which DFSB claims to have acquired exclusive U.S. distribution rights is December 19, 2014, less than three months before it filed this lawsuit.  (Yoo Decl. Exh. J at 14-23.)  Yet, it would have this Court and the citizens of this forum, at great inconvenience, consider whether it should be entitled to statutory damages based on conduct DFSB is hoping but not certain that occurred so that it can "vindicate" purported rights it obtained on the eve of filing suit.

To recap, after settling a related Korean lawsuit, DFSB long ago intended to sidestep the Korean courts and file a lawsuit here so that it could pursue the maximum settlement utilizing U.S. statutory damages in a U.S. court.  (Yoo Decl. Exh. C.)  In fact, as Plaintiff admitted, it had decided to sue Defendants even before it noticed the songs at issue being distributed on Beats Music and certainly before it had any knowledge of distribution through mnet.com (knowledge that it still lacks), its core allegations.  (Bernie Cho Rough Tr. at 153:7-13; 154:8-15; 225:3-8.)  So that it had a basis to sue Defendants, DFSB then, at the direction of its current litigation counsel, set out to "acquire" the purportedly exclusive distribution rights to the songs it now asserts, which it admits was no sooner than December 19, 2014, or just 77 days before it filed this lawsuit.  (*Id.* at 151:8-152:3; Yoo Decl. Exh. J at 14-23.)

In other words, this is forum-shopping at its clearest as this is not an instance

---

[2]   The parties have arranged for a third party, hired by DFSB, to audit CJ E&M Corporation's payment database in Korea to verify the extent of U.S. transactions, if any, concerning the songs at issue during the statutory period.  That review is expected to occur during the week of January 11.

of an aggrieved party earnestly seeking to protect its U.S. property rights in the appropriate forum.  Here, DFSB, a Korean corporation, seeks to leverage a legal fiction by which it purports to have acquired Korean property rights and what it perceives as an advantageous U.S. statutory scheme in order to achieve a maximum recovery by harassing Defendants with oppressive logistical burdens.  In so doing, DFSB has asked this Court, the parties, and the public to grant their indulgence. This Court can and should decline.

## II.    ARGUMENT

### A.    The Private Interest Factors Favor Dismissal.

#### 1.    The Key Party Witnesses Are In Korea.

The witnesses who will be critical in resolving this dispute all reside in Korea. In disputing that truth, Plaintiff tries to gloss over the significance of the upcoming CJ E&M 30(b)(6) depositions in Korea while grossly exaggerating the periphery role of U.S.-based non-party witnesses.  (Opp. at 14.)  In so doing, Plaintiff invites this Court to focus on rote quantity and ignore the *qualitative* importance of those Korea witnesses.  (*Id.*)  This Court should not be led askance.  For instance, in its June 4, 2015 order, this Court observed that it "appears that this action will involve at least some witnesses . . . from Korea and some from the United States."  (June 4, 2015 order at 4.)  But the relative significance of those witnesses to this action is vastly different, and favors dismissal.

For one, the forthcoming U.S.-based non-party depositions are unlikely to yield anything probative of an issue actually in dispute.  This is because, among other things, CJ E&M Corporation *does not dispute* (and has not disputed since the outset) that

- It provided certain sound recordings to the Beats Music service, including 36 of the songs at issue.

- *Some* of those songs were streamed in the U.S., the full extent of which is evidenced by a royalty report provided by Beats Music.  (*See* Exhibit A to the Sealed Declaration of Timothy B. Yoo In Support of Defendants' Motion to Dismiss [Dkt. No. 42].)

- CJ E&M Corporation provided those songs to Beats Music by sending digital files to a content-uploading intermediary, MediaNet.

- Those files contained information associated with the sound recordings, including ISRCs and UPCs.

In other words, there is *no dispute* factually that Defendant CJ E&M provided sound recordings from Korea to Beats through MediaNet, and along with them, associated information such as ISRCs and UPCs.  In fact, Beats, MediaNet, and CJ E&M were and remain willing to stipulate to those facts, especially considering the amount of the royalty base at issue (*see* Dkt. No. 42-2 ["Mem."] at 1).  The question before a court is only whether that conduct was proper.

Since the above facts are not in issue, the gravamen of the dispute regarding Beats, then, lies in whether CJ E&M had the distribution rights to those recordings and, relevant to Plaintiff's DMCA claim, what its intent was when providing information[3] to MediaNet.  The witnesses that *can* shed light on those issues, i.e., Dong-hun Lee and Ji-hye Yoon, both sit in Korea, and their depositions have not occurred.  Further, they are not scheduled to occur until the week of January 25, after the hearing on this motion.

Moreover, relevant to Plaintiff's other claims, Defendant CJ E&M Corporation *does not* concede that it lacked the rights to distribute music in the U.S. through mnet.com.[4]  It merely contends that it took affirmative steps to prevent such

---

[3]   Defendants do not concede that the information provided can be considered "copyright management information" under the statute.

[4]   In contending otherwise, Plaintiff mischaracterizes for instance the testimony of CJ E&M America's 30(b)(6) witness.  (Opp. at 3.)  Among other infirmities with Plaintiff's misuse of such testimony, the witness expressly lacked any foundation for such a statement, and as such, it is pure speculation and not probative.  This is because as the witness testified, CJ E&M America is not involved in the administration of the mnet.com website or in clearing licenses for any music available on the website.  (*See* Dkt. No. 43-2 ["Killoren Decl."] at ¶¶ 5, 12.)

1   distribution from occurring.  Thus, the disputed issues regarding mnet.com are

2   multi-tiered.  They include whether (1) any U.S. distribution occurred through

3   mnet.com in the first place; and *if so*, (2) whether DFSB or CJ E&M held those

4   international distribution rights; and *if* CJ E&M did not hold those rights; (3)

5   whether CJ E&M's actions in fact constituted "distribution in the U.S." under

6   applicable law; and (4) whether its efforts in blocking overseas purchases from the

7   website were consistent with the scope of the distribution rights granted to it.  The

8   latter inquiry is especially important here, since DFSB has admitted that (1) it is not

9   aware of any instances of such distribution in the U.S. having occurred (Bernie Cho

10  Rough Tr. at 225:3-8); and (2) its sole objective is to reach statutory damages, as its

11  opposition underscores (Opp. at 2).  The CJ E&M witnesses able to testify about the

12  above issues, Dong-hun Lee and Young-rock Pyo, sit in Korea, and their depositions

13  are likewise scheduled to occur during the week of January 25.

### 2.      The Key Non-Party Witnesses Are In Korea.

15          The non-party witnesses essential to resolving this dispute are all in Korea.

16  These include witnesses: (1) affiliated with Sha Label; (2) affiliated with Neowiz

17  and Buda Records; and (3) witnesses affiliated with the companies who purported to

18  grant rights to DFSB concerning the other 267 songs at issue (that CJ E&M did not

19  provide to Beats but were allegedly distributed through mnet.com).

20          As a threshold matter, since they are all foreign nationals, as opposed to U.S.

21  citizens or residents, they are beyond the inherent subpoena power of this Court.

22  *See* 28 U.S.C. § 1783.  What is more, Korea has opted out of the portion of the

23  Hague Evidence Convention pertaining to the taking of voluntary depositions of

24  Korean nationals.[5]  This undercuts DFSB's Korean-law expert who opined that "it

_____

Instead, all of that is handled in Korea.

[5]   *See generally* 23 U.S.T. 2555, Art. 23; *Republic of Korea's
Declarations/Reservations*, https://www.hcch.net/en/instruments/conventions/status-
table/notifications/?csid=1057&disp=resdn ("In accordance with Article 23, the

1   *may* be permissible to compel a witness to testify prior to trial . . . .” (Declaration of

2   Seung Gon Jo [Dkt. No. 50-5] at ¶ 3 (emphasis added).)  Thus, even through a

3   Letter of Request under the Hague Evidence Convention, the parties’ ability to

4   obtain pre-trial discovery is at best, as Plaintiff’s witness recognizes, dubious.

5   Either way, what is not disputed is that the time for execution of a Letter of Request

6   (for instance, for testimony to be used at trial) to Korea’s National Court

7   Administration spans anywhere from between 2 and over 12 months from receipt,[6]

8   which makes it virtually impossible to predict with reasonable precision if a request

9   will be granted, and if so, when.  Further, each Letter of Request and supporting

10  documents will have to be translated from English to Korean, which will require

11  further lead time and expense (even assuming without basis that the National Court

12  Administration would accept it).  In sum, the process by which the parties must try

13  to obtain evidence from critical non-parties out of their control is uncertain, time-

14  consuming, and burdensome—that is, inconvenient.  Conversely, the process would

15  be much more efficient before a Korean court, a factor that favors dismissal.

16      As it stands, CJ E&M has submitted to this Court uncontroverted evidence in

17  the form of witness statements and supporting documents that it was granted the

18  U.S. distribution rights for the songs it provided to Beats Music, and that those

19  rights have been undisturbed.  So that DFSB could have the opportunity to cross

20  examine those witnesses, Defendants attempted to arrange for their voluntary

21  depositions, but they have declined.  Perhaps recognizing the futility of compelling

22  those depositions, as well as the disproportionate effort required (given the royalty

23  amounts that those recordings have yielded), in arguing their lack of significance to

24

---

25  Government of the Republic of Korea declares that it will ***not*** execute Letters of

26  Request issued for the purpose of obtaining pre-trial discovery of documents.”)
    (emphasis added).

27  [6]   *Republic of Korea – Central Authority*,

28  https://www.hcch.net/en/states/authorities/details3/?aid=846.

1  this dispute, DFSB appears content eschewing further discovery from those

2  witnesses.  Hence, there is sufficient uncontroverted evidence before this Court for it

3  to find that CJ E&M Corporation, and not DFSB, held the U.S. distribution to the

4  songs provided to Beats, and that DFSB therefore lacks standing to assert them here.

5      For the remaining 267 songs, Defendants have not conceded that they lacked

6  the appropriate distribution rights and therefore will seek discovery from the rights

7  holders that purported to grant "exclusive" rights to DFSB in December 2014,

8  including about the circumstances under which those rights were purportedly

9  granted.  This will likely entail witnesses from over a dozen different companies

10  (Yoo Decl. Exh. J at 14-23), along with the attendant logistical difficulties from

11  obtaining such third-party discovery in Korea.  For instance, those witnesses all

12  reside in Korea, and as outlined above, Defendants' ability to obtain discovery from

13  them before this Court is dubious.  This is a factor that favors dismissal.

14      **B.**   **The Public Interest Factors Favor Dismissal.**

15          **1.**   **Issues Of Korean Law Abide.**

16      The central question of who holds what distribution rights to the Korean

17  songs at issue must be decided under Korean law.  (Mem. at 20.)  (This includes the

18  distribution rights to the Beats-related songs *and* the mnet.com-related songs.)  And

19  because that question is potentially fact-intensive (*id.* at 20), it will be far easier for

20  a Korean court (with all of the pertinent facts and witnesses available before it) to

21  answer.  Furthermore, a court will have to adjudicate the effect of the prior 2012

22  settlement agreement between DFSB and CJ E&M Corporation.  The parties'

23  present disagreement regarding the basic scope of that release, and further, what the

24  underlying claims entailed in the first place, underscores the difficulty of resolving

25  that question here.  The threshold issue is whether DFSB previously alleged that CJ

26  E&M Corporation distributed songs overseas through mnet.com without the artists'

27  permission.  The record from the Korean litigation, as evidenced by the settlement

28  order submitted to this Court, (Yoo Decl. Exh. H ["2012 settlement order"]), could

not be clearer: DFSB alleged that CJ E&M had "allowed overseas users using overseas IP to illegally stream and download 3947 songs distributed overseas by the plaintiff . . . from the sites www.mnet.com . . . ." (2012 settlement order at 10-11.) This was confirmed by DFSB's principal during deposition. (Bernie Cho Rough Tr. at 202:20-203:1.) Even if the words "copyright infringement" were not used, it does not change that the Korean claim alleges *the same wrong* as DFSB asserts here: that CJ E&M distributed certain sound recordings overseas through mnet.com.

The other salient issue is whether the release language from the 2012 settlement order is sufficiently broad to cover DFSB's current claim. Defendants submit that insofar as DFSB asserted the same songs pertaining to the same wrong (overseas distribution through mnet.com) in the prior litigation, its present claims should be barred, since DFSB chose to relinquish those claims as part of the settlement order. And while Plaintiff disagrees, a court will have to decide who is correct under Korean law. But relevant here, Plaintiff's attempts to interpret the English-language version of that release is improper. The Korean-language release should be interpreted under Korean law principles in order to determine if the release language, whereby the parties (according to the English-language translation) agreed not to "submit any other civil claims . . . in relation to the agreement of this case" (2012 settlement order at 2), bars Plaintiff's present claim. That determination would be far more convenient before a Korean court. Also, any judgment by this Court that includes a determination of that issue different than a Korean court's would create a conflict of law issue, a factor that favors dismissal.

## 2. This Forum's Interest In This Dispute Is Minimal.

The U.S. public's interest in the subject matter of this lawsuit is minimal. For one, the Beats royalty report reflects the level of demand for the 36 Beats-related songs. (Yoo Decl. Exh. A.) Likewise, Plaintiff's stated gross profits,[7] the starting

_____

[7] Plaintiff has yet to actually produce any supporting evidence.

point for Plaintiff's actual "damages," reflects the consuming public's lack of
interest in the remaining 267 songs.  (Yoo Decl. Exh. J at 14.)  Plaintiff's hand-
waving aside, the numbers speak for themselves, and they say resoundingly that the
public does not care about the songs asserted here.  In trying to refute that truth,
Plaintiff's improperly conflate Defendants' forum activities directed at promoting
Korean popular culture globally—which is CJ E&M's mission statement—with the
U.S. public's interest in the 303 songs in dispute, which as the evidence shows, is
insignificant.  Conversely, Korea's interest in this lawsuit, involving its largest
entertainment and media company and which has garnered headlines locally, is
concurrently substantial.  This factor therefore favors dismissal.

### C.      Plaintiff's Choice Of Forum Should Be Given Minimal Deference.

The relevant inquiry in a *forum non conveniens* analysis is whether the
inconvenience to the parties and public in trying this case here outstrips whatever
level of deference should be given to Plaintiff's choice of forum.  *Cheng v. Boeing
Co.*, 708 F.2d 1406, 1409 (9th Cir. 1983) (citing *Miskow v. Boeing Co.*, 664 F.2d
205, 208 (9th Cir. 1981)).  Given DFSB's stated purpose of bringing this lawsuit,
underscored by the discovery obtained thus far, its choice of forum should be given
no deference.  While a foreign plaintiff's choice of forum is automatically given less
deference, that is because the rebuttable assumption in those instances is that the
plaintiff chose a U.S. forum for a reason other than its convenience.  *See Pollux
Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003) (When a
foreign plaintiff chooses to sue in the U.S., "it is more likely that forum-shopping
for a higher damage award or for some other litigation advantage was the motivation
for plaintiff's selection.")

Here, there is no presumption necessary: Plaintiff's *express* purpose of
bringing suit in this Court was so that it could access enhanced statutory damages.
(Yoo Decl. Exh. C.)  This is underscored in its opposition.  (Opp. at 2.)  Its choice
thus deserves minimal deference.  Plaintiff's forum shopping should be given even

10

less, i.e., no deference where, as here, its choice was dictated not by a lack of access to justice in a foreign tribunal, but purely as an avenue to perpetuate its wealth-transference scheme hatched many years earlier.  Even the sequence of events that led to this lawsuit is entirely backwards.  Typically, a company holds a property right, and if that right is infringed, it will *thereafter* seek to assert that right, for instance, by suing the infringer in its home forum.  Here, DFSB decided to sue Defendants before anything else.  It then set out to find a way to do that.  First, it hired its current litigation counsel.  *After that*, sometime in December 2014 at the direction of its litigation counsel, it purported to obtain "exclusive" distribution rights to the songs currently at issue, giving it what it thought was the opening it needed to sue Defendants.  (Bernie Cho Rough Tr. at 151:8-152:3; 152:15-153:16.)  And because it recognized that its actual damages were trivial to none, which fact discovery has now confirmed, it sued Defendants in a U.S. court less than 77 days later, where it hoped that the inconvenience to CJ E&M Corporation of being dragged into a court away from its home and the specter of enhanced statutory damages could yield a quick payday.  This Court should not indulge Plaintiff's opportunism, and its choice of forum should appropriately be given no deference.

### D.   Defendants Did Not Delay In Bringing This Motion.

The timing of this motion does not favor its dismissal.  As the record shows, CJ E&M America's motion to dismiss this action based on *forum non conveniens* was heard in June 2015.  This Court, in part citing an "undeveloped record," denied the motion "WITHOUT PREJUDICE[,]" in essence inviting Defendants to preserve and renew its arguments pending fact discovery  (June 4, 2015 order at 5.)  And in fact, the intervening discovery has confirmed the Korea-centric nature of this dispute; namely, the lack of CJ E&M America's involvement, the amount at issue concerning the Defendants' Beats-related conduct, and the potential importance of non-party witnesses located in Korea.  As an initial matter, Defendants should not be faulted for Plaintiff's procrastination in serving fact discovery: Defendants were

not propounded with discovery requests until mid-September 2015, and discovery had therefore only spanned three months prior to Defendants' motion.  For instance, CJ E&M America's 30(b)(6) witness, Angela Killoren, through no fault of Defendants, was not deposed until December 15, 2015, less than two weeks before this motion.  Ms. Killoren confirmed among other things that: (1) nobody at CJ E&M America is involved in licensing sound recordings or the underlying music content for Korean music; (2) nobody at CJ E&M America had any contact with MediaNet, and thus, nobody at CJ E&M America was involved in the provision of ISRCs or UPCs to Beats; (3) CJ E&M America has not received any revenue from Korean music that is distributed in the U.S.; and (4) nobody at CJ E&M America controls the content that is displayed on or available on the mnet.com website.  (*See* Killoren Decl.)  Nothing in Plaintiff's opposition and supporting declarations refutes any of those factual assertions.

The *next day*, undersigned counsel informed Plaintiff's counsel that Defendants intended to file this motion.  And while Plaintiff harps on the amount of discovery that has occurred, it ignores the critical discovery that remains, namely, the upcoming depositions of CJ E&M Corporation's 30(b)(6) witnesses, who were actually involved in among other things (1) acquiring licenses to the songs at issue; (2) providing some of those songs to Beats Music; and (3) efforts to block overseas access to the mnet.com website.  In other words, *none* of the percipient fact witnesses for any issue actually in dispute has been deposed.  And by deciding this motion before that discovery commences, this Court will permit the parties to avoid spending any additional time and expense that this matter clearly does not merit.  Furthermore, Plaintiff will not be prejudiced, since any discovery that it has conducted here can likewise be used in a Korean lawsuit.

## III.   CONCLUSION

This Court should dismiss this lawsuit in its entirety with prejudice so that it can be refiled in a Korean court.

1  DATED:  January 11, 2016          Respectfully submitted,

2

3                                     Ekwan E. Rhow
                                      Timothy B. Yoo
4                                     Bird, Marella, Boxer, Wolpert, Nessim,
                                      Drooks, Lincenberg & Rhow, P.C.
5

6                                     By:   _____/s/ Timothy Yoo_____
7                                                  Timothy B. Yoo
                                      Attorneys for Defendant
8                                     CJ E&M Corporation and CJ E&M
9                                     America, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3233321.5

13